BROWN, Chief Judge.
| ,In this workers’ compensation case, defendant, Thompson Home Health, appeals from a judgment in favor of claimant, Lisa Green, ordering it to pay wage benefits and medical expenses, plus attorney fees and penalties. For the following reasons, that judgment is reversed.

Facts

On April 14, 2009, claimant, Lisa Green, was employed as a nurse liaison by defendant, Thompson Home Health, when she was involved in a motor vehicle accident arising out of and in the course of her employment. According to the accident report, the collision caused minor damage to the vehicles, claimant’s air bag did not *492 deploy, and no injuries were reported at the scene. Subsequent to the accident, however, claimant visited her primary physician, Dr. Floyd Jones, complaining of pain in her right knee as a result of her knees striking the dashboard of her vehicle during the auto accident.
Claimant reported the auto accident to defendant the day it occurred and was out of work for approximately one week. Claimant continued to work until Dr. Jones took her off work on May 18, 2009. A short-term disability form was filled out by claimant, defendant, and Dr. Jones, that stated that the disability did not arise out of her employment, but rather an illness dating back to January 2007. Dr. Jones fully released claimant to return to work on August 12, 2009. Five days later, however, claimant’s employment came to an end.
Claimant filed a 1008 disputed claim for compensation with the Office of Workers’ Compensation on October 23, 2009, seeking temporary | «.total disability benefits, indemnity benefits, medical expenses, supplemental earnings benefits, attorney fees, and penalties. A trial on the merits was held on July 29, 2010. The deposition testimonies of Drs. Jones and Douglas Brown, claimant’s orthopedist, were submitted, as well as claimant’s medical records. Dr. Brown diagnosed claimant with right patella femoral post-traumatic chon-dromalacia (also referred to as patellofem-oral syndrome) and recommended that she undergo arthroscopy patella shaving with a lateral tendon release. The workers’ compensation judge (“WCJ”) found in favor of claimant and awarded her wage and medical benefits, penalties, and attorney fees, less monies received from the motor vehicle accident civil suit. From this judgment defendant has appealed.

Discussion

An employee is entitled to workers’ compensation benefits if she received personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031(A). The plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. Thomason v. Wal-Mart Stores, Inc., 37,-520 (La.App.2d Cir.09/04/03), 852 So.2d 1283, writ denied, 03-2774 (La.12/19/03), 861 So.2d 573.
A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.01/14/94), 630 So.2d 689; Hatfield v. Amethyst Construction, Inc., 43,588 (La.App.2d Cir.12/03/08), 999 So.2d 133, writ denied, 08-2996 (La.02/13/09), 999 So.2d 1150. The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Peveto, supra.
If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof. Lowe v. Skyjacker Suspensions, 45,058 (La.App.2d Cir.03/03/10), 32 So.3d 340. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof *493 are factual determinations, not to be disturbed upon review unless clearly wrong. Id.; Daniel v. House of Raeford Farms of LA, 44,753 (La.App.2d Cir.09/23/09), 23 So.3d 374, writ denied, 09-2326 (La.01/08/10), 24 So.3d 871.
Our review of the medical records submitted shows that for more than two years prior to the accident claimant had been complaining of pain and swelling in her knees to multiple doctors. In fact, the day preceding the accident she visited Dr. Jones complaining about her right knee. Specifically, Dr. Jones’s handwritten notes state that the claimant’s “right knee collapses; fell 3 weeks ago; lower back pain radiates down right leg; |4pain posterior knee; fell/stumbled few times, fell down stairs at home.” During this visit Dr. Jones performed a number of tests on claimant’s right knee; his notes of that day include a finding of “right knee slight effusion,” assessing that she may have a “possible small meniscus tear” in her right knee and “patellofemoral syndrome,” and his “plan” was to “give chondromalacia patella [exercise] sheet” to claimant and schedule an MRI of her right knee.
Two days after the accident occurred, claimant again went to see Dr. Jones. She again complained of pain in her knees and stated that her knees hit the dashboard during an accident. Dr. Jones performed some more tests and noted his findings of eechymosis (bruise) and a possible cruciate ligament strain. Dr. Jones testified that the eechymosis would have had to have been smaller, 2-3 centimeters, since he generally measures and notes the larger ones. Again, Dr. Jones noted chondroma-lacia patella and told claimant to do the exercises from the exercise sheet he had given her a few days before.
On April 24, 2009, ten days after the accident, claimant went to Dr. Ralph Abraham “complaining of right knee pain with weakness — will fall at times — happens when [she] wears flat shoes.... ” Although Dr. Abraham did not testify at trial, nor was he deposed, the notes of this particular visit are very consequential. Ten days after her motor vehicle accident, claimant goes to a doctor complaining of pain in her right knee and references her multiple falls but makes no mention of an automobile accident or her knees putting a dashboard. On cross, claimant stated that she saw Dr. Abraham before she started seeing Dr. Jones in early 2007.
Claimant visited Dr. Brown on January 18, 2010. Dr. Brown’s initial impression was that claimant had chondromalacia patella, so he ordered her to undergo a new MRI of her right knee. Similar to the MRI performed a few months prior, the results showed no meniscus tears or ligament strains, only a small joint effusion. Based upon this and the results from his exam, Dr. Brown concluded that claimant had chondromalacia patella. Dr. Brown testified that claimant’s chondromalacia patella was likely brought about by trauma to her knee, such as from hitting the dashboard during an automobile accident. When asked specifically by counsel for claimant if he was of the opinion that the accident caused or contributed to claimant’s chondromalacia, Dr. Brown stated that “[b]y what you’ve told me and what she told me and what I could gather from our examination, the answer would be yes.” On cross-examination, however, Dr. Brown and counsel for defendant had the following exchange:
Counsel: Okay. So she didn’t give you any history of having had any problems with her right knee or left knee?
Dr. Brown: No. Well, she did tell me she’d had this connective tissue disorder ... I don’t know if she had been having knee complaints ... a lot of *494 patients with those conditions have multiple joint aching and swelling.
[[Image here]]
Counsel: Did she tell you that she was treated for her right knee on the day before the accident, April 13, when she fell down her stairs at her house?
Dr. Brown: No.
[[Image here]]
1 ñ(Dr. Brown now looking at Dr. Jones’s notes from April 13, 2009.)
Counsel: That’s all on the 13th.
Dr. Brown: So—
Counsel: If I tell you that he had—
Dr. Brown: “Patellofemoral syndrome.” So that would be the type of thing we’re talking about.
Counsel: Okay. If you were to assume that we took Dr. Jones’ deposition and he testified ... that his impression [on the 13th] was that she may have a small patellar tear and also may have some chondromalacia in the right knee ... would that make a difference on your impression as to whether or not you could relate your diagnosis of developed post traumatic chondroma-lacia related to the accident on 4-14?
Dr. Brown: Well, there may be a combination of causes.
Counsel: Okay. So it could be that she did have chondromalacia before the accident and bumped her knee on the dashboard and it aggravated it?
Dr. Brown: Yes.
Counsel: Is there any way to tell the degree of aggravation, given that medical history?
Dr. Brown: No.
Counsel: Is it possible that she could have just bruised her knee and had a knee strain and then the bruise went away, but she still had the chondroma-lacia which she had before?
Dr. Brown: Yes.
The WCJ stated in her oral reasons that her determination that there was an aggravation of a preexisting condition was based on claimant’s physicians’ findings and opinions, not on claimant’s “statements concerning 17the extent of her injuries during the motor vehicle accident.” The basis for not relying upon claimant’s statements was apparently due to questions regarding claimant’s credibility.
The weight afforded a treating physician’s testimony is largely dependent upon the facts upon which his opinion is based. Perow v. Lenzly, 30,833 (La.App.2d Cir.08/19/98), 716 So.2d 519. A claimant’s lack of credibility on factual issues can serve to diminish the veracity of her complaints to a physician. Bass v. Allstate Ins. Co., 32,652 (La.App.2d Cir.01/26/00), 750 So.2d 460; Perow, supra.
In presenting her history to Dr. Brown, claimant omitted relevant portions of her medical history, particularly her knee problems, her multiple falls, and Dr. Jones’s diagnosis of chondromalacia prior to her accident. Thus, the weight afforded to Dr. Brown’s opinion as to the causal connection between the accident and injury is greatly diminished. He found these facts out for the first time during cross-examination, and as a result he ultimately had to concede that it was possible that claimant’s chondromalacia was present before the accident and that the accident did not aggravate it, or if it did, to what degree it did so would be impossible to determine. Dr. Jones’s deposition and medical records also raise questions about when claimant’s right knee pain began and whether or not the accident aggravated it to any further degree.
The following facts are relevant: On April 3,' 2009, claimant requested additional Lortab, but because she was not due for *495 more until April 18, 2009, Dr. Jones refused; claimant stated that she was using more |sdue to falling; claimant called in again on April 9, 2009, requesting Lortab again because she had pain and had been falling; Dr. Jones gave her enough to get her through until her appointment on April 13, 2009; lastly, claimant called into Dr. Jones’s office again on April 29, 2009, requesting Lortab again, this request was refused because claimant had taken 180 Lortabs since April 13, 2009. Dr. Jones further testified that his view that claimant’s chondromalacia was aggravated by the accident was based upon claimant’s increased complaints of pain. He did, however, admit that for him to reach that conclusion he had to rely on the claimant’s contention that the pain increased after the accident. Clearly, claimant was in pain prior to and after the accident.
In addition to claimant’s lack of credibility on factual issues and the omission of relevant medical history upon which Dr. Brown could rely, claimant undertook other actions which seriously call into question whether the disability she seeks compensation for now was caused or contributed to by the motor vehicle accident. On May 18, 2009, the day Dr. Jones took her off work, claimant sought short-term disability benefits. The documents submitted to Assurant Employee Benefits by Dr. Jones state that claimant’s symptoms first appeared in January 2007; that the subjective symptoms of her disability are pain in joints, goiter and mitral valve, and the objective symptoms are tricuspid and valve insufficiency, atrial flutter, and hypothyroidism. There is no mention of chondromalacia, and, under “Patient’s symptoms result from,” neither the employment nor auto accident boxes are checked. Next, on October 19, 2009, claimant filed a disability |flclaim with the Social Security Administration alleging disability “due to connective tissue parathyroid thyroid, heart disease and Lupus since 05/18/2009.” Claimant’s short-term disability claim was denied.
We find that there are too many inconsistencies and contradictions to reasonably conclude that claimant met her burden of proving that the motor vehicle accident of April 14, 2009, aggravated, accelerated or combined with her preexisting condition to cause the disability for which compensation is claimed. Claimant worked the month after the accident, then sought short-term disability benefits, permanent disability benefits, and, lastly, workers’ compensation benefits. Each time different ailments and/or injuries were listed as the basis for the benefits sought.
The WCJ also called claimant’s credibility into question. Claimant visited Dr. Jones the day prior to the accident complaining of knee problems and pain, and at that time he diagnosed her with chondro-malacia. To conclude that the minor accident the following day was such a precipitous event that claimant’s just diagnosed chondromalacia was aggravated to the extent that she could no longer work is highly speculative, especially when coupled with claimant’s evident credibility issues and subsequent actions-working the month after the accident and filling out disability benefit forms claiming other ailments as the basis therefor. Clearly the disabling symptoms did exist before the accident and the medical and circumstantial evidence does not reasonably indicate a possibility of a causal connection between the accident and the activation of the disabling condition.

110Conclusion

Based upon the foregoing, the judgment of the WCJ is reversed. Judgment is rendered in favor of defendant, dismissing plaintiffs claims. Costs of this appeal are assessed to claimant, Lisa Green.
*496 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS and LOLLEY, JJ.
Rehearing denied.