BROWN, Chief Judge.
| defendant, Heart’s Desire, L.L.C., appeals from the judgment of the Workers’ Compensation Judge (“WCJ”) finding that claimant, Barbara Douglas, proved by a preponderance of the evidence that she suffered a work-related accident. For the reasons stated herein, we reverse that judgment.

Facts and Procedural Background

Claimant, Barbara Douglas, filed a claim for benefits under the Louisiana Workers’ Compensation Act against her employer, defendant, Heart’s Desire, L.L.C. Defendant provides home services to individuals requiring house cleaning, bathing assistance, food preparation, transportation, and other services that are not of a medical nature. Claimant had been employed by defendant to work as a sitter, and she had worked in that capacity for approximately one year. At the time of the alleged accident, January 17, 2011, claimant was assisting her patient, Vicky McElroy, exit a vehicle. Mr. McElroy slipped, and in the process of helping him up, claimant states that she felt a “pop” in her back. Claimant continued to work as a sitter for Mr. McElroy and other clients until January 29, 2011, at which time she took herself off work.
Claimant sought medical treatment at E.A. Conway Medical Center on January 27, 2011. The hospital records for this visit reflect a complaint of numbness in the right thigh area for two weeks, with an indication of low back pain. The records, however, do not mention a work-related accident. Claimant, thereafter, informed her supervisor, Rita Isaac, of the alleged | ^work-related accident on January 31, 2011, and requested that workers’ compensation pay for her medical care.
On February 1, 2011, claimant underwent an EMG nerve conduction study at the Green Clinic in Ruston, Louisiana. The referring physician was Dr. Steven Venters of the Union General Rural Health Clinic in Farmerville, Louisiana, where claimant had long been a patient due to an extensive history of hip problems. The reason for claimant’s referral to the Green Clinic was listed as “numbness of lower extremities” by Dr. Venters and as “right thigh numbness and low back pain” by the Green Clinic. Based upon the results of the EMG nerve conduction study, Dr. Michael Ehrlich recommended that claimant undergo an MRI of her lumbar spine.
On February 3, 2011, claimant was seen by Lynette Wade, a nurse practitioner at the Union General Rural Health Clinic. Ms. Wade referred claimant to the Medical Center of South Arkansas for an MRI of her lumbar spine. The MRI was done on February 7, 2011, and showed a right fora-minal disc protrusion with mass effect upon the right L2 nerve root at level L2-3, and at L4-5 there is a broad disc bulge and small left foraminal protrusion without significant nerve root impairment, but with mild central canal stenosis. Thereafter, Ms. Wade made an appointment for claimant to see Dr. Counts at the Orthopedic Clinic of Monroe on February 21, 2011. When claimant reported for her appointment, however, the doctor refused to see her because the workers’ compensation carrier had denied her claim.
*828 This matter went to trial before the WCJ on February 9, 2012. At the conclusion of the trial the WCJ issued her ruling in open court. The WCJ | sfound that claimant had sustained her burden of proving a compensable accident; awarded temporary total disability benefits retroactive to the last date of employment; allowed claimant her choice of physicians in the field of orthopedics and neurology; ordered reimbursement of all out-of-pocket expenses paid as a result of the accident; and awarded a penalty of $2,000 against defendant for its failure to pay disability benefits; a penalty of $2,000 for defendant’s failure to approve medical treatment; and $7,500 in attorney’s fees.

Discussion

An employee is entitled to workers’ compensation benefits if she receives a personal injury by accident arising out of and in the course of her employment. La. R.S. 28:1031. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 28:1021(1).
A claimant must prove by a preponderance of the evidence that an employment accident occurred and that the accident had a causal relationship to the disability claimed. Modicue v. Graphic Packaging, 44,049 (La.App.2d Cir.02/25/09), 4 So.3d 968. A causal relationship is established when the employee proves that before the accident she was in good health, but commencing with the accident the symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and [4the disabling condition. Poland v. Kroger, No. 404, 32,576 (La.App.2d Cir.12//08/99), 747 So.2d 711, writ denied, 00-0583 (La.04/07/00), 759 So.2d 764.
If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry her burden of proof. Green v. Tompson Home Health, 46,593 (La.App.2d Cir.09/21/11), 73 So.3d 490, writ denied, 11-2460 (La.01/20/12), 78 So.3d 143. The trier of fact’s determinations as to whether a worker’s testimony is credible and whether the worker discharged her burden of proof are factual determinations, not to be disturbed upon review unless manifestly erroneous or clearly wrong. Id.; Lowe v. Skyjacker Suspensions, 45,058 (La.App.2d Cir.03/03/10), 32 So.3d 340.
In the case sub judice, claimant’s case consists of her testimony, the testimony of Mr. McElroy, and her medical records. Claimant testified that prior to the accident she had never experienced any back problems or pain, nor had she had any problems with her thigh. According to claimant’s stated time line of events, she went to Union General on January 12, 2011, complaining of right hip pain. On January 17, 2011, she hurt her back trying to help Mr. McElroy out of her car. She tried to work through the pain, but on January 27, 2011, it became so unbearable she had to go to E.A. Conway Medical Center. According to her, this was the first time she sought medical attention for her back and thigh following the accident. Claimant testified that at some point after her visit to E.A. Conway she took|fione her clients to Union General, where she encountered Ms. Wade. Claimant stated that Ms. Wade asked her why she was walking with a limp, and claimant informed *829 her about her right thigh numbness. As a result of this encounter, claimant testified, Ms. Wade arranged for the EMG/nerve conduction study to be administered at Green Clinic on February 1, 2011.
Our thorough review of the medical records, however, leads us to question the accuracy of claimant’s testimony. Dating back approximately 4 ½ years prior to the alleged accident, claimant’s records reflect multiple complaints involving her thigh and/or back. On November 3, 2006, Union General’s records reflect that Ms. Wade entered in the “Impression” section of her records “Sciatica.” On an October 31, 2008, Clinical SOAP Note, Ms. Wade entered “Pain in joint involving pelvic region and thigh.” While there is no corresponding handwritten report, the billing summary for an October 16, 2009, visit at the Union Clinic of Marion shows the medical code 724.1 with the modifier “Pain in thoracic spine.” This was the only listed reason for the office visit.
In addition to the aforementioned references to back and/or thigh problems, the most contradicting records are those of a December 17, 2010, appointment and a January 12, 2011, appointment, one month and five days prior to claimant’s alleged accident, respectively. Claimant’s chart for December 17, 2010, lists, among other impressions, “Lumbar pain.” Meanwhile, on claimant’s January 12, 2011, visit Ms. Wade wrote that claimant’s chief complaint was “right hip pain worse since last visit” and under “Impression” she wrote “lumbar” but scratched it out and wrote “right Ifihip pain.” Additionally, the chart states “EMG/Nerve conduction lower extremity study Green Clinic.” Again, this was noted five days prior to the alleged work-related accident and the later performed EMG/Nerve conduction study ultimately led to claimant undergoing the February 7, 2011, MRI that she now uses as proof of a disabling work-related injury.
Claimant attempts to discredit these two records by arguing that the December 2010 record’s reference to “Lumbar pain” is not legible, but' if by happenstance it is what was written, it was likely written in error, just as it was an error on her January 12, 2011, visit. As for the scheduled EMG, claimant posits it was simply entered on the wrong chart.
Considering that neither Ms. Wade nor any other medical professional testified on behalf of claimant, we cannot say with any degree of certainty whether the EMG/ Nerve conduction note on claimant’s chart was in fact entered on the wrong chart. We can, however, say that the “Lumbar pain” impression was in fact listed on claimant’s December 17, 2010, chart. Although claimant may claim that it is not legible, the corresponding billing summary lists, among others, medical code 724.2 with the modifier “Lumbago.” This same medical code and modifier are the only ones listed on claimant’s February 3, 2011, billing summary, claimant’s first charted visit to Union General after the alleged accident.
Other than her own self-serving testimony, the only other testimony offered in support of claimant’s claim of a work-related injury is the testimony of Mr. McElroy, who testified that he heard claimant grunt when she first attempted to help him to his feet. When cross-examined, however, |7Mr. McElroy stated that he heard claimant grunt but that she “didn’t show no pain signs ... She went on, like I said, did what she wanted and left.” Regardless of the fact that claimant grunted while lifting Mr. McElroy, it has little bearing on whether claimant experienced a sudden event that led to her claimed disability. The totality of the evidence is to be considered to determine whether claimant suffered a *830 work-related accident in the course of her employment.
Ultimately, the evidence in support of claimant’s claim of a work-related accident is her testimony that prior to January 17, 2011, she had never experienced problems with her back and/or thigh, and the testimony of Mr. McElroy that he heard her grunt. The medical evidence submitted, though, completely contradicts claimant’s testimony. In the 4 ½ years prior to the alleged accident, claimant’s medical records reflect multiple complaints involving her thigh and/or back. In particular, the records establish that in the month prior to the accident, claimant had complaints of lumbar pain and had been scheduled for an EMG/Nerve conduction study for her lower extremities. Claimant’s only explanation for these chart notations is error on someone else’s part. If that were the case, then claimant should have provided evidence to that effect. As it stands, the medical records call claimant’s credibility into question, and lead us to conclude that claimant’s back problems had been manifesting for at least the month prior to her alleged accident, maybe longer. This leads us to speculate that claimant was possibly injured at another time or was suffering a gradual deterioration, as opposed to a sudden onset work-related injury. Is As such, we And that the WCJ’s determination that claimant met her burden of proving by a preponderance of the evidence a causal relationship between the accident and the disability claimed was clearly wrong.[1]

Conclusion

For the reasons stated, the judgment of the WCJ in favor of claimant, Barbara Douglas, is reversed. Judgment dismissing claimant’s claim is rendered in favor of defendant, Heart’s Desire, L.L.C. Costs of this appeal are assessed to claimant.

. Based upon this finding, we need not address defendant's remaining assignments of error.