Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,100-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KAREN GRANT                                    Plaintiff-Appellant

versus

McCONNELL PAINTING CORP.              Defendants-Appellees
AND LUBA CASUALTY
INSURANCE COMPANY

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of Caddo, Louisiana
Trial Court No. 17-07688

Linda Lea Smith
Workers' Compensation Judge

* * * * *

KAREN GRANT                                    In Proper Person


LUNN IRION LAW FIRM LLC                Counsel for Appellees
By: Walter S. Salley
    Joseph Martin Lattier

* * * * *

Before PITMAN, GARRETT, and McCALLUM, JJ.

**GARRETT, J.**

The claimant, Karen Grant, appeals a judgment wherein a workers' compensation judge ("WCJ") dismissed her disputed claim for compensation with prejudice on the basis that she failed to prove she had an accident within the course and scope of her employment with McConnell Painting Corporation. We affirm the WCJ's decision.

## FACTS

The claimant began working for the employer as a painter in October 2016. Her employment was terminated in July 2017.

In November 2017, the claimant filed a disputed claim for compensation with the Office of Workers' Compensation in which she alleged that she suffered an injury to her right wrist on December 18, 2016. She asserted that she was working at the Louisiana Boardwalk at 1:45 a.m. She stated that she was told to clean up the shop area and pour up the paints into their rightful paint buckets. When she grabbed a full, five-gallon bucket, it "pulled" her hand and "[immediately] my wrist popped." She stated that the supervisor was notified an hour later. The claimant alleged that she was totally incapacitated as a result. In January 2018, the employer and its insurer, LUBA Casualty Insurance Company ("LUBA"), filed their answer.

Trial was held in November 2018. Both sides admitted into evidence the claimant's medical records and her personnel and payroll records from the employer. In addition to testifying herself, the claimant presented the testimony of her son-in-law and coworker, Phibulus Carhee. The

defendants presented the testimony of Marc McConnell, the employer's project manager; Robert McConnell, the employer's president; and Joe Burks, a supervisor who worked for the employer.

### *Occurrence of alleged accident*

In support of her claim that she was injured at work, the claimant presented her own testimony and that of her son-in-law, Carhee. Both testified that on December 18, 2016, they were working in the shop, which was a storage space where the employer kept its equipment while painting the Boardwalk's exterior walls. Carhee was washing paint buckets in one room, while the claimant was in another room, pouring paint from five-gallon buckets to one-gallon buckets for use on the job. The claimant testified that she grabbed what she believed was an empty five-gallon bucket and began to walk away. However, the bucket was full. The claimant testified that when the bucket dropped down, she felt her right wrist pop. Carhee testified that he did not see the alleged incident, but he heard the claimant holler that she had hurt herself. When he went to check on her, he observed a five-gallon bucket on the floor and the claimant was holding her right arm. She showed him a knot on top of her wrist. Both testified that she contacted Burks, their supervisor, and that Burks looked at her arm, said she had an "open wrist," and told her to wrap it with blue tape.

In contrast, Burks testified that the claimant never told him she was involved in a work-related accident and that he only learned that she was claiming the occurrence of such an accident after she was laid off in July 2017. Marc McConnell testified that he was unaware of a work-related accident involving the claimant. Robert McConnell testified that he first became aware of the alleged work accident in September 2017.

2

### *Medical treatment*

The claimant testified that she first sought medical attention for her wrist on January 10, 2017, and was told by her physician, Dr. Larry Daniels, that she had a ganglion cyst. However, Dr. Daniels' records show that the claimant was seen for several issues, including "[m]usculoskeletal pain," on December 15, 2016, three days before the alleged accident. The musculoskeletal pain was described as "Location: right hand (top of hand). The pain is aching and throbbing. The pain is aggravated by lifting, movement and pushing. Hand dominance: right." Her pain was rated as 7/10. Her condition was assessed as "[g]anglion cyst of finger of right hand." At trial, the claimant insisted that these medical records were wrong. She denied that Dr. Daniels told her she had a ganglion cyst at this appointment. She stated that she was experiencing problems with her right thumb, probably due to arthritis flaring up in cold weather.

The medical records reflect that on January 10, 2017, the claimant was seen by Dr. Daniels for "Follow Up of Anxiety, Follow Up of Hypertension and cyst." They state that the claimant had a "ganglion cyst to right hand." She was referred to the Orthopedic Surgery Department at University Health.

On May 3, 2017, she was seen at University Health. According to the recorded medical history for this visit, the claimant stated that she began working for a painting company in October 2016 and the work required her to do a lot of heavy house cleaning and rolling out paint. Three months after she started, she developed what she describes as a "knot" on top of her right hand. She stated it popped out acutely and it was extremely painful. An ultrasound determined that there was no ganglion cyst but a mild widening

3

of the scapholunate joint. A subsequent MRI showed a complete tear of the right scapholunate ligament and degenerative disease of the right wrist. The claimant was treated several times by Dr. Marjorie Rachel Chelly. After an appointment on July 10, 2017, Dr. Chelly recorded that the claimant "denies any trauma to her wrist prior" and that she informed the claimant "she had a chronic tear of her SL [scapholunate] ligament. I told her that I could not tell her when this occurred. She seems to believe this is from her job but cannot give me an event that caused this problem. I told her that some people can develop an injury to the wrist which does not manifest itself until much [later]."

In her outpatient clinic notes pertaining to a follow-up appointment with the claimant on September 13, 2017, Dr. Chelly stated that they had an extensive conversation and a "difficult time communicating." The claimant was adamant her injury happened at work. The doctor further stated:

> I continued to tell her that unfortunately there is no way for me to say that this was a work-related injury. Given her age and the chronic nature of this issue and the fact that she already has wrist arthritis, it was difficult for me to say that this occurred acutely. The fact that she already has wrist arthritis points to me that this is a chronic issue that has been going on for a little bit longer than she states. . . . Again, I tried to explain to her that there was no way for me to say that this was related to her job given her age and some of the findings on MRI and the fact that she already has wrist arthritis, and again I told her that this was something that she needed to discuss with her employer, but I could not say with certainty that this was related to her job or an injury she claims to have happened at her job. I could only go by the information that I have currently. She was not happy with this answer, and then continued to tell me that this was Workman's Comp and that this should be an issue with Workman's Comp.

The claimant testified that she was dissatisfied with Dr. Chelly's failure to schedule surgery. An adjuster for LUBA arranged for her to see Dr. Diego Miranda, an orthopedic wrist surgeon, on November 28, 2017.

4

According to the claimant, Dr. Miranda told her that she had a five-inch tear, was totally incapacitated from returning to work, and required surgery as soon as workers' compensation approved the procedure.[1]  The claimant testified that this appointment was the last one she had related to her alleged work-related injury.

### *Other claims*

The claimant testified as to other work-related issues.  In February 2017, she sent a certified letter requesting a meeting with Jack McConnell, who is apparently the owner of McConnell Painting, about sexual harassment claims she made against Burks, her supervisor.[2]  She filed a complaint with the National Labor Relations Board ("NLRB") and later the Equal Employment Opportunity Commission ("EEOC") concerning the sexual harassment claims.  In April 2017, she filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that Burks allowed workers to drink and that a worker fell from a ladder and busted up his leg.  The claimant was terminated in July 2017.  She testified that she believed she was fired in retaliation for the OSHA complaint.

Burks testified that he had worked for the employer for 29 years and had been a supervisor for 24 to 25 years.  He denied trying to date the claimant or sexually harassing her.  He also denied cutting her hours after

---

[1] Dr. Miranda's medical report states that the claimant presented with a right wrist injury that "occurred at work last year in December" and that she was not treated for the injury until about "3w ago."  He suggested a "[r]ight wrist reconstruction of scapholunate ligament with graft."  The traumatic onset date given in the report was "12/28/16."

[2] This letter was included in the employer's business records, along with a note by Jack McConnell in which he stated that the claimant declined his offer to move her to another crew and his offer of a meeting.

5

she filed the sexual harassment claim against him. He asserted that, if her hours were reduced, it was weather-related or because work slowed down.

Marc and Robert McConnell testified about receiving a phone call from a person who identified himself as Carhee, in which the caller stated that the claimant was lying about her claims against the employer. Marc testified that he answered the phone call and was told by the caller that the claimant was making up the sexual harassment claims, but he could not testify against her because she was family. Marc transferred the call to Robert, who testified that the caller told him the claimant was "just making everything up." He took this as applying to both the workers' compensation and the sexual harassment claims. Robert further testified that the NLRB denied the sexual harassment claim and that the matter had gone to the EEOC.

On rebuttal, Carhee denied that he ever called Marc and Robert McConnell. He testified that he saw Burks sexually harass the claimant on a daily basis, but he never reported it to anyone but Burks, his supervisor.

During her testimony, the claimant admitted that, while working for the employer, she was receiving Supplemental Security Income ("SSI") but failed to properly report her work income. As a result, while she was still on SSI at the time of trial, she was being required to repay $25 per month.

### Ruling

At the conclusion of the trial, the WCJ gave oral reasons for ruling in which she expressed concerns about the claimant's credibility. Among other things, the WCJ cited the lack of medical treatment immediately after the alleged work accident, as well as the fact that there was no reported history of a work accident until the claimant went to University Health and Dr.

6

Miranda many months after the alleged injury. The WCJ specifically observed that the claimant's testimony was directly contradicted by the medical report of December 15, 2016. Given the claimant's lack of hesitation in filing other complaints against the employer, the WCJ said she could not understand why the claimant would not have also filed a written workers' compensation claim. As to the claimant's credibility, the WCJ noted the issue with her receipt of SSI and her failure to properly report her work income. After weighing all of the evidence and in light of the issues with the claimant's testimony, the WCJ ruled that the claimant did not meet her burden of proof and did not establish by a preponderance of the evidence that she had an accident on December 18, 2016, while in the course and scope of her employment, which resulted in any objective signs of injury that caused a loss of wage-earning capacity. Judgment dismissing the claimant's suit with prejudice was signed December 17, 2018.

The claimant appealed. No longer represented by counsel, she filed a pro se brief which was, at best, difficult to follow. She asserted that the WCJ's ruling was based on bias and prejudice, that the WCJ somehow "profiled" her character, and that "defamation" of her character "was and still under the gun." She attached a copy of the transcript of the WCJ's oral reasons for judgment, which she annotated in various spots, expressing her disagreement with the WCJ's stated reasons. In one place, she stated that the WCJ's decision was not based on the law, but on what the WCJ felt about an unspecified 20-year statute of limitations.

In their appellate brief, the defendants contended that the WCJ properly dismissed the claimant's suit. In support of their argument, they specifically cited the following: (1) the claimant's failure to make a timely

7

written report of a workers' compensation claim while she was able to make written complaints pertaining to sexual harassment; (2) the medical evidence which shows the claimant's failure to mention a work accident to Dr. Daniels until an appointment in August 2017, the recitation in the University Health records that the claimant was unable to give Dr. Chelly a specific event which caused the right wrist problem, and Dr. Chelly's inability to relate the wrist issue to the claimant's work; (3) the claimant's ability to continue working for the company for more than six months after the alleged accident; and (4) the symptoms the claimant displayed three days before the alleged accident, as noted in Dr. Daniel's records.

## LAW

The plaintiff in a workers' compensation action bears the burden of establishing the causation of an injury to a work-related accident by a preponderance of the evidence. *Thomas v. GM Benefits & Serv. Ctr.*, 48,718 (La. App. 2 Cir. 1/15/14), 132 So. 3d 464; *Harrison v. Madison Parish Sch. Bd.*, 47,496 (La. App. 2 Cir. 11/21/12), 108 So. 3d 153. A work-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).

While the worker's testimony alone may be sufficient to discharge the burden of proving a work-related accident, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Such corroboration may

8

include medical evidence and the testimony of a spouse, fellow workers, or friends. *Thomas v. GM Benefits & Serv. Ctr.*, *supra*; *Slater v. Mid-South Extrusion*, 43,343 (La. App. 2 Cir. 8/13/08), 989 So. 2d 252.

A claimant's lack of credibility on factual issues can serve to diminish the veracity of her complaints to a physician. *Thomas v. GM Benefits & Serv. Ctr.*, *supra*; *Green v. Thompson Home Health*, 46,593 (La. App. 2 Cir. 9/21/11), 73 So. 3d 490, *writ denied*, 11-2460 (La. 1/20/12), 78 So. 3d 143.

Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. *Bradford v. Webster Par. Police Jury*, 48,981 (La. App. 2 Cir. 5/14/14), 139 So. 3d 39. The trial court is in a superior position to evaluate the credibility of witnesses than is the appellate court. *Harris v. City of Bastrop*, 49,534 (La. App. 2 Cir. 1/14/15), 161 So. 3d 948. The trier of fact's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. *Harris v. City of Bastrop*, *supra*; *Green v. Thompson Home Health*, *supra*.

The WCJ's factual findings are subject to manifest error review. *Johnson v. Manitowoc Co.*, 52,264 (La. App. 2 Cir. 9/26/18), 256 So. 3d 463, *writ denied*, 18-1759 (La. 1/8/19), 260 So. 3d 592. In applying the manifest error or clearly wrong standard, the court must determine not whether the trier of fact was wrong, but whether the fact finder's conclusion was a reasonable one. *Stobart v. State through Dep't of Trans. & Dev.*, 617 So. 2d 880 (La. 1993). The fact finder's choice between two permissible views of the evidence cannot be clearly wrong. *Johnson v. Manitowoc Co.*, *supra*.

**DISCUSSION**

Based upon her consideration of the evidence and her credibility findings, the WCJ concluded that the claimant had not carried her burden of proving that a work-related accident occurred. After reviewing the record, we disagree with the claimant's contention that the WCJ was clearly wrong in these factual determinations.

There were no witnesses to the claimant's alleged accident. The only other employee in the shop was Carhee, the claimant's son-in-law, and he was in an adjoining room. When he went into the room where the claimant was in response to her cry that she had hurt herself, he saw a paint bucket on the floor and a knot on the top of the claimant's wrist. However, Burks denied that he had been called by the claimant about any work injury.

Furthermore, the claimant's medical records indicate that she had already sought medical attention from Dr. Daniels for a painful condition with the top of her right hand three days before the alleged accident. The first mention of her right wrist problem possibly being work-related is found in her University Health records in May 2017. However, Dr. Chelly noted that, while the claimant seemed to believe this condition was related to her job, she could not cite the doctor to an event that caused it. Dr. Chelly further recounted in her notes that, based on the information she had, she could not say that the claimant's wrist issue was related to her employment.

Additionally, the WCJ considered the claimant's failure to make any written complaint of her alleged work-related injury to her employer until after she was terminated in July 2017. Given the claimant's demonstrated willingness to make other workplace complaints in writing, her failure to do likewise for a workers' compensation claim is somewhat suspect.

10

Based on the foregoing, we find no manifest error in the WCJ's decision that the claimant failed to carry her burden of proof. Accordingly, we affirm the judgment below.

## CONCLUSION

We affirm the judgment dismissing Karen Grant's claim with prejudice. Costs of this appeal are assessed to the claimant, Karen Grant.

**AFFIRMED.**