LOLLEY, J.
 

 | iDefendant, Perini/O & G Industries, appeals a judgment from the Office of Workers’ Compensation, District 1-W, Parish of Caddo, State of Louisiana, which found in favor of claimant, Robin Alley. For the following reasons, we reverse in part and affirm in part.
 

 FACTS
 

 This matter arises out of an accident which occurred on May 18, 1994, when claimant, Robin Alley, worked at the construction company Perini/O
 
 &
 
 G Industries (“Perini”). While working with others to lift a cross tie, Alley felt a pulling sensation and immediate back pain. Perini stipulated that there was an accident (“Perini accident”) and that Alley was hurt. Alley filed this lawsuit in 2005 when Perini ceased paying benefits after having paid them for 520 weeks (10 years). After having two separate attorneys withdraw resulting in several delays, Alley proceeded to trial as a
 
 pro se
 
 litigant on October 8, 2007. At trial, the issue to be determined was which, if any, of Alley’s continuing medical conditions were causally connected to the Perini accident.
 

 After the trial, the Workers’ Compensation Judge (“WCJ”) found that Alley was not entitled to permanent or total disability benefits under the Workers’ Compensation Act, medical treatment regarding her heart condition or her left shoulder injury, or home health care. However, the WCJ did find that Alley was entitled to medical benefits and treatment for the following conditions: chronic pain; incontinence; depressive disorder; dental condition; dry mouth and dry eyes; neck pain; back pain; headache; radiating leg pain and nerve damage from her back injury; pain | ^management; hernia; effects from use of prescription medications; and, removal of the ANS unit. The WCJ also found that Alley was entitled to her choice of pain physician; medicals including mileage benefits for the above listed conditions; and, that defendant must repay Medicare/Med
 
 *430
 
 icaid. In addition, defendant was charged with penalties for delay of Alley’s treatment. The WCJ also found that Alley did not violate La. R.S. 23:1208. This appeal by Perini ensued.
 

 LAW AND DISCUSSION
 

 On appeal, Perini argues that the WCJ was manifestly erroneous in finding that Alley was entitled to medical benefits, mileage, choice in pain physician, and Medicare/Medicaid repayment for the conditions listed above. In addition, Perini appeals the WCJ’s finding that Alley did not violate La. R.S. 23:1208.
 

 Workers’ compensation benefits are available for claimants who suffer personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031(A). Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 1996-2840 (La.07/01/97), 696 So.2d 551. In order for the employee to recover, he must establish a causal link between the work-related accident and his injury.
 
 Albert v. Trans-Met, Inc.,
 
 38,261 (La. App. 2d Cir.06/23/04), 877 So.2d 183;
 
 Qualls v. Stone Container Corporation,
 
 29,794 (La. App. 2d Cir.09/24/97), 699 So.2d 1137,
 
 unit denied,
 
 1997-2929 (La.02/06/98), 709 So.2d 736. The claimant does not |3necessarily have to establish the exact cause of his disability or injury, but he must demonstrate by a preponderance of the evidence that the accident had a causal connection with it.
 
 Buxton v. Sunland Construction,
 
 34,995 (La.App. 2d Cir.08/22/01), 793 So.2d 526.
 

 If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof.
 
 Lubom v. L.J. Earnest, Inc.,
 
 579 So.2d 1174 (La.App. 2d Cir.1991). The issue of disability within the framework of the workers’ compensation law is not solely a medical determination. The totality of the evidence, lay and medical, resolves the issue. The fact finder is free to accept or reject the opinion of a physician or medical expert depending upon that expert’s qualifications, credibility and testimony.
 
 Anthony v. BE & K Construction,
 
 32,729 (La.App. 2d Cir.05/10/00), 760 So.2d 608,
 
 writ denied,
 
 2000-1673 (La.09/15/00), 768 So.2d 1280.
 

 Medical Evidence
 

 At trial, Alley complained of a myriad of medical conditions that she attributes to the Perini accident. Alley’s medical history is lengthy as it covers over 14 years of treatment, both for physical and mental issues. The evidence supports the claim that Alley suffered from a hernia and mild ligamentous strain in her back soon after the Perini accident. Perini, at trial, agreed with this assessment but not to the other conditions that Alley complains of.
 

 |
 
 ¿Back Injury
 

 Alley’s back problems are complicated. For one thing, we note that Alley had a pre-existing back injury which required a total of four surgeries in 1984 and 1985 around the L4 and L5 region of the spine. This predated her employment with Perini. After reviewing the medical evidence, the most informative documents are the medical reports regarding Alley’s treatment immediately after the Perini accident. Her first physician, Dr. Don Burt, attended to her right after the accident and opined that Alley did “show some tightness of the low back at the time; however, she had normal strength, normal reflexes, normal sensation, normal sciatic stretch tests, and normal electromyographic studies involv
 
 *431
 
 ing the lower extremities.” In short, he “judged her recent injury to be entirely muscular in nature.” Alley decided to obtain a second opinion.
 

 Dr. Christopher Burda, a rheumatologist, diagnosed her with a “mild ligamen-tous strain” and she was sent to physical therapy. In July 1994, Alley came back to Dr. Burda with new complaints, i.e., neck pain. Dr. Burda referred her to Dr. James Zum Brunnen, an orthopaedic surgeon, for further examination. She underwent an MRI of the lumbar spine on September 30, 1994, which showed scarring around the L4 and L5 area where her previous operations were performed; however the examinations did not show any neck-related or new back injuries. In 1995, Dr. Zum Brunnen’s notes indicated that she is showing some “general improvement.” In fact, Dr. Zum Brunnen gave her permission to ride her “gentle” horse. One month later, Dr. Zum Brun-nen reported that she “move[d] about | ¡¡readily.” On May 8, 1995, Alley was in a car accident and came to Dr. Zum Brun-nen complaining for the first time of thoracic and shoulder pain, and tenderness in the right cervical area, in addition to some lumbar pain.
 

 Psychological Issues
 

 Alley came back to Dr. Zum Brunnen with psychological issues 6 months after the Perini accident. Dr. Zum Brunnen referred her for a psychological consult. The report from this consult indicated that Alley “shows extremely poor health habits in comparison to her peers. Continuation of a similar lifestyle will compromise her health over a lifetime.” Eventually Dr. Charles Armistead, a psychiatrist, saw her in March 1995 and his report indicated that Alley felt she had been “phobic for years.” Dr. Armistead stated that he did not know the exact extent of her medical problems but noted Alley’s primary complaint was a work situation and issues with sexual harassment while at Perini. She was diagnosed as having chronic anxiety with phobic features and chronic depression.
 

 In 2001, she reported having family problems and this worried her significantly. In 2003, a report indicated that she had not had her Zoloft in weeks and the nausea and vomiting may have resulted from her anxiety and depression. Also in 2003, another examiner, Dr. Jonathan Cole, found that there are “psychological factors creating or exacerbation [sic] the patient’s pain presentation_She is overly focused on her health at this time and she can be passive/aggressive and get back at other people indirectly when she feels she has been wronged.”
 

 1rPain Management and Other Conditions
 

 Over the next 10 years, Alley moved twice for personal reasons, first to South Carolina and then Kentucky. She continued to see various doctors — including many pain management specialists. In South Carolina at the Carolina Spine Institute, Dr. Leonard Forrest opined that her neck issues “are considered to be soft-tissue related only.” In 1998, Dr. Forrest believed that the treatment had reached “maximum medical improvement” after a series of epidural injections in the L4, L5 region of her back. Alley eventually switched doctors, and started seeing Dr. Mark Netherton who suggested the use of Racz catheter procedure and completed this operation in September 1998. When this procedure did not prove to be effective, Dr. Netherton suggested that the last thing they could try that would be helpful but “not make her 100%” was to implant a dorsal column stimulator for pain control (“ANS unit”). In 2001, she received the ANS unit.
 

 In Kentucky, Dr. Harold Rutledge treated Alley at the Central Kentucky Pain
 
 *432
 
 Professionals, PLLC. He reported in his medical record:
 

 I attempted to clarify exactly where she was complaining of new pain in the right lower extremity. I asked specifically if she could describe the pain in the front, side, back of the upper left and whether it extended below the knee into the foot, etc. She seemed not to be able to do this and three minutes or so later, I still was unclear exactly where she was experiencing pain in her right leg.
 

 Alley also saw Dr. Mark Delomas in Kentucky, and he performed another operation, a bilateral lumbar facet injection with fluoroscopy.
 

 The record also indicates that over the past 13 years she has complained of various symptoms and “new” medical issues developed 17including incontinence, upper extremity weakness and numbness, leg pain, gum disease as a result of her prescribed medications, ANS unit malfunction, and fibromyalgia.
 

 Causal Connection
 

 After a thorough review of the evidence we cannot find a causal connection of the various conditions to the Perini accident. First we note that Alley’s psychological evaluations all allude to a “sexual harassment” incident that occurred on the job presumably while at Perini yet nothing is mentioned about the actual on-the-job accident. The reports also indicate that her psychological issues manifest themselves as somatic health issues including chronic pain. This was evident early on when the first psychological “consult indicated that, somatic complaints have characterized the past year.” The same diagnosis has been made over the last decade regarding her psychological state and we cannot, by a preponderance of the evidence, attribute her various psychological issues to the accident.
 

 Further, we cannot determine the various medicines and treatment that have multiplied over the years to be related to the Perini accident. We find the car accident Alley had in 1995 to be of great significance and a superseding incident. The record indicates that Alley was doing better before her motor vehicle accident. Several of the complaints Alley had at trial could be directly linked to the motor vehicle incident. In addition, several reports over the last decade consistently attribute her back pain to the scarring from the previous surgeries and not to the Perini accident. In [8May 1996, Dr. Zum Brun-nen noted that he does “not advise surgical treatment.” This same analysis was made five years later when Alley went to the Carolina Spine Institute. A doctor there stated that she would not be a candidate for back surgery.
 

 Accordingly, we analyze each of the conditions that the WCJ found were a consequence of her work-related injury.
 

 Chronic Pain:
 
 The record does not disclose whether the chronic pain is due to the previous surgeries, the motor vehicle accident, natural aging, or psychological issues manifesting themselves as somatic conditions. Because we have determined that issues with the hernia have been resolved, and the current general pain cannot be causally related to the “mild liga-mentous strain” from 14 years ago, we find the WCJ was manifestly erroneous in awarding medical benefits for chronic pain.
 

 Incontinence:
 
 Her medical records vary as to whether she suffered from bowel or bladder dysfunction. In 1999, the first time incontinence is mentioned, Alley explained that this occurred after one of her epidural injections. However in 2000, one report indicates she does not suffer from incontinence. There is also some indication that this could be a result of a rectal fistula that was repaired in 1991.
 
 *433
 
 Dr. Rutledge was unable to determine a connection between her medications for her back problems and the incontinence. Dr. Steven Swift, a South Carolina doctor treating Alley for incontinence, indicated that he could not determine the exact cause and that it is a “relatively impossible task.” Therefore we find the WCJ was manifestly erroneous in its finding.
 

 \JDepressive Disorder:
 
 As we noted above, there were several accounts of Alley’s anxiety over her perceived “sexual harassment” at work which is not the subject of this lawsuit. When she did mention her back pain during these consults she reported being afraid of future surgeries and talked about her previous back surgeries. There has been no indication that future back surgery is necessary.
 

 Treatment for side effects from her prescription medications:
 
 Since we cannot determine the duration of use and which medications were legitimately used to manage her mild ligamentous strain 14 years ago — if any — we cannot find that all side effects are covered as a result of the Perini accident.
 

 Dental condition, dry mouth and dry eyes:
 
 These conditions are side-effects from her medication intake. Nothing in the record specifically connects pain medication to her mild ligamentous strain or hernia. As such, the WCJ erred in finding these to be a derivative of the Perini accident.
 

 Neck:
 
 After the Perini accident, several tests showed no evidence of neck-related injuries. In 1998, she reported her neck symptoms were minor. We cannot find supporting evidence relating the pain to the Perini accident. In addition, there have been several superseding incidents that could have caused the neck pain, e.g., car accident, psychological issues, etc. Therefore, we find that the WCJ erred in its findings.
 

 Back:
 
 All reports indicate that the pain Alley continues to experience is related to scarring from the initial surgeries predating her employment at Perini. Therefore we disagree with the WCJ that this condition is related to the Perini accident.
 

 |
 
 mLey Pain/Nerve Damage:
 
 Here, Alley fails to causally connect this condition to the Perini accident. Several MRIs of the lumbar spine show the scarring from the previous surgeries as a possible reason for this condition. We also mention that the treating physicians had a hard time identifying the issue to begin with. Again, the evidence does not support the WCJ’s findings.
 

 Headaches:
 
 First indication of headaches, according to the record, were in 2004. There is no evidence what the cause or relationship is to the various medical conditions and procedures Alley has had. Therefore we find the WCJ erred in finding this treatment is related to the Perini accident.
 

 Pain Management:
 
 The findings have been consistent among the pain management doctors that the treatments are not helpful for Alley. Dr. Rutledge opined that Alley has an expectation regarding treatment that was “unrealistic.” He further stated that:
 

 It appears to me that Alley has had good treatment in at least two very good pain clinics. Despite their efforts, she continues to report her pain level at 10 +. It is unlikely that further aggressive therapy will make any significant difference.... I am of the opinion that Ms. Alley’s report of the current pain condition is unreliable and report of response to therapy is at best difficult to assess.
 

 
 *434
 
 In addition to its ineffectiveness, we cannot find a causal connection between the need for pain management and the Perini accident. We find the WCJ was manifestly erroneous in awarding this treatment.
 

 Hernia,:
 
 Alley, in her brief, admits that her hernia had been “fixed” and the record does not indicate any further issues related to the hernia.
 

 ANS unit:
 
 The unit was placed for back and leg pain that cannot be causally linked to Perini accident. Nevertheless, several doctors did not feel |,,that anything should be done. In 2004, Dr. Delomas stated that he “could find nothing wrong with it and would not be doing surgery on the unit again. He further advised her to returned to clinic where she had it put in to see if they had any options for her.... ” We cannot find the removal of the unit is either necessary or causally related to the Perini accident.
 

 Other findings:
 
 In light of our reversal of medical treatment of all the above listed medical conditions, we also reverse the WCJ’s grant of choice of pain management physician. Furthermore, we reverse the order for payments of medical bills and mileage expenses related to the conditions and the reimbursement to Medicare/Medicaid. The WCJ was manifestly erroneous in assessing penalties for the delay in approval of treatment of incontinence and the removal of the ANS unit as these claims were reasonably controverted.
 
 See
 
 La. R.S. 23:1201(F)(2).
 

 While we sympathize with Alley’s ongoing afflictions, after a thorough review of the voluminous medical evidence, we fail to find a causal connection between the Peri-ni accident and the array of ailments with two exceptions, neither of which require further treatment: the hernia and mild ligamentous strain of the back. Alley’s medical evidence leaves the question open to speculation or conjecture regarding the source of her disabilities, and therefore she failed to carry the burden of proof.
 

 Fraud charge
 

 Perini argues that Alley committed fraud when she allegedly “made false statements” to obtain an adjustable therapeutic bed. Specifically, Perini argues that she manipulated Dr. Delomas into writing a prescription claiming- she had already received approval from the insurance company. | ^Louisiana R.S. 23:1208 provides in pertinent part:
 

 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation!.]
 

 E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter[.]
 

 Alley argues that there was a misunderstanding and points out that she never received the bed. We do not believe Alley intentionally tried to defraud the workers’ compensation insurance, and find that the WCJ was not plainly wrong in finding that there was no violation of La. R.S. 23:1208.
 

 CONCLUSION
 

 In light of our findings, we note that Robin Alley has had a windfall of benefits after having numerous medical procedures, prescriptions, and doctors paid for by the worker’s compensation insurance for 10 years. While we do not dispute that Robin Alley suffers from physical pain we cannot find a continued causal connection to the Perini accident.
 

 We affirm the WCJ’s finding that Alley was not entitled to permanent or total disability benefits under the Workers’
 
 *435
 
 Compensation Act, medical treatment regarding her heart condition or her left shoulder injury, or home health care. We also affirm the WCJ’s finding that Alley did not violate La. R.S. 23:1208. In all other respects, the judgment is reversed. Costs are to be assessed equally among the parties.
 

 AFFIRMED IN PART; REVERSED IN PART; RENDERED.