# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-57

**JOSHUA B. DOUCET**

**VERSUS**

**NATIONAL OILWELL VARCO FLUID CONTROL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 10-11781
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Marcus Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, Louisiana 70605**
**(337) 474-1644**
**Counsel for Plaintiff Appellee:**
       **Joshua B. Doucet**

**Charles A. Mouton**
**Jared L. Foti**
**Mahtook & LaFleur, L.L.C.**
**Post Office Box 3089**
**Lafayette, Louisiana 70502**
**(337) 266-2189**
**Counsel for Defendant Appellant:**
      **National Oilwell Varco Fluid Control**

**KEATY, Judge.**

Defendant, National Oilwell Varco Fluid Control (NOV), appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of its former employee, Joshua Doucet (Doucet), finding that he was injured in a work-related accident and awarding him workers' compensation benefits along with penalties and attorney fees. Doucet answers the appeal and asks for additional attorney fees for work related to this appeal. For the following reasons, we affirm and award Doucet additional attorney fees on appeal.

## FACTS AND PROCEDURAL HISTORY

On December 30, 2010, Doucet filed a 1008 Disputed Claim for Compensation (1008) against NOV, seeking benefits and medical treatment pursuant to the Louisiana Workers' Compensation Act (LWCA), La.R.S. 23:1021-1415, for injuries that he allegedly sustained in a workplace accident on August 22, 2010. At the time of the alleged accident, Doucet was employed as a service technician with NOV working in Caddo Parish, Louisiana. The job location was approximately three hours from Doucet's home in Welsh, Louisiana; thus, Doucet was staying at an apartment complex supplied by NOV for housing its out-of-town employees. Doucet alleges he contracted a methicillin-resistant staphylococcus aureus (MRSA) infection on August 22, 2010 from the apartment supplied by NOV. Doucet further sought an award of statutory penalties and attorney fees, characterizing NOV's failure to pay compensation benefits as arbitrary and capricious and alleging that NOV had failed to reasonably controvert his claim. In its answer to Doucet's 1008, NOV asserted that its denial of benefits was reasonable and proper, and it disputed Doucet's allegation that its actions were arbitrary, capricious, or unreasonable.

After a trial on the merits which took place on July 9, 2012, the WCJ took the matter under advisement. In a written judgment signed on September 21, 2012, the WCJ ruled in favor of Doucet and held that he carried his burden of proving a causal connection between the MRSA staph infection and his residence at the apartment. Accordingly, the WCJ awarded Doucet the following: (1) temporary total disability benefits from November 4, 2011 to February 18, 2012 in the amount of $2,146.14; (2) medical benefits including reimbursement of out-of-pocket medical expenses and mileage expenses; (3) $2,000.00 in penalties for failure to pay indemnity benefits; (4) $2,000.00 in penalties for failure to pay medical benefits; and (5) attorney fees in the amount of $10,000.00, with interest, including litigation expenses totaling $754.78.

NOV is now before this court asserting that: (1) the trial court erred as a matter of law in failing to address whether Doucet sustained an "injury by accident" as defined by the LWCA; (2) the trial court erred in awarding medical and indemnity benefits to Doucet as a result of an MRSA staph infection without competent medical evidence to causally relate the infection to his employment with NOV; and (3) the trial court erred in awarding penalties for failure to pay medical and indemnity benefits and attorney fees for prosecution of the claim.

## DISCUSSION

### I. Personal Injury By Accident

NOV contends that Doucet did not sustain an injury by accident as defined by the LWCA. In *Green v. National Oilwell Varco,* 10-1041, pp. 2-4 (La.App. 3 Cir. 4/27/11), 63 So.3d 354, 357-58, this court noted:

> A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by accident arising out of and in the course

2

of his employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

This court discussed the standard of review to be employed in workers' compensation cases in *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

As mentioned above, NOV contends that Doucet did not sustain an injury by accident as defined by the LWCA. NOV alleges that the trial court's oral reasons for judgment solely address the issue of causation and are silent as to whether

Doucet sustained an "accident" or "injury" as defined under the LWCA. Doucet counters that NOV's argument is without merit.

The record shows that Doucet was twenty-six years old and was employed by NOV for approximately five years when the accident occurred. At trial, Doucet testified that he was a service technician. His job location was located in north Louisiana and far away from Doucet's home in Welsh, Louisiana; thus, he would stay at the Hillside Apartments (the apartment) when working that location. Doucet testified that the apartment was supplied by NOV for housing its out-of-town employees. Doucet would stay at the apartment when he was not servicing a rig. Doucet testified that usually "six, seven people stayed in there at a time," including other NOV employees and service technicians. Doucet testified that "[p]eople just came in as they came from rigs and stuff like that, to swap out, and we just kind of -- it was kind of like having a meeting area is what it was." Although he acknowledged that a cleaning lady came "once a week and vacuumed" and "wiped down the sinks and stuff," Doucet testified that "people came in and -- all the time dirty and laid on the couches and furniture." According to Doucet, the apartment was not spotless "by any means."

On August 22, 2010, Doucet testified that he noticed a bump on his left leg. Medical records indicate that he presented to the emergency room on August 30, 2010, for treatment of the bump. At that time, Dr. James Kyle (Dr. Kyle) performed an incision to drain the abscess, prescribed medication, and instructed Doucet to follow up with his family physician. Doucet then presented to his family physician, Dr. Patrick Griffith (Dr. Griffith), who diagnosed the bump as a staph infection. Dr. Griffith incised the bump or boil, drained it, and packed the abscess. He released Doucet back to work on September 7, 2010.

4

Doucet then worked for NOV until approximately October 29, 2010, when he noticed a new bump on his left leg, which was very similar to the one of August 22, but more aggressive. Dr. Thomas Rossowski (Dr. Rossowski) performed surgery on November 5, 2010, wherein he determined that Doucet had MRSA, which was a very aggressive, antibiotic-resistant form of staph. Dr. Rossowski's notes indicate that, based on the history given to him by Doucet, a shared apartment was the source of the staph/MRSA infection.

Following the surgery, Dr. Tyson Green (Dr. Green) provided wound care for Doucet.[1] With respect to the MRSA which is the subject of this lawsuit, Dr. Green testified that he treated Doucet from November 19, 2010, through February 23, 2011. During this time, Dr. Green advised that he did not want Doucet to work. According to his deposition, Dr. Green released Doucet to work on February 18, 2011.

In addition to providing the WCJ with his medical records, Doucet testified that he discussed the situation with a NOV supervisor, Terry Walraven (Walraven), who mentioned that Doucet's bump sounded like the same ailment that plagued another co-worker named Kelly Hanks (Hanks). Doucet also testified that this was confirmed by another supervisor, Alcide Hargrave (Hargrave). Doucet maintained that Hargrave told him that Doucet probably contracted the bump from "that nasty apartment" as people were "getting it left and right."[2]

By deposition, Hanks corroborated Doucet's testimony. Hanks testified that his last day of work was July 6, 2010. Hanks stayed at the apartment, arriving for

---

[1] Additionally, Dr. Green treated Doucet for chronic dermatitis of his lower legs from June through July 2010, which is prior to Dr. Green's treatment of Doucet's MRSA in the present matter.

[2] There is no deposition testimony of Walraven or Hargrave contained in the record.

5

his hitch around two weeks prior to July 6, 2010. Hanks testified that he had to leave work because of a boil that appeared around five days before July 6, 2010. Hanks testified that after August 22, 2010, Doucet contacted him to discuss the bumps, which Hanks referred to as boils. Doucet sent a photo of his boil or bump to Hanks over the phone. Hanks testified that it looked very similar to his. Hanks testified that he discussed the matter with his physician, Dr. Richard of Kaplan, Louisiana, who confirmed to Hanks that the boil(s) were evidence of a staph infection. Before July 2010, Hanks had never suffered from a staph infection. Hanks further testified that he had heard that a couple of other employees at NOV, Steven Hebert and Lawrence Bellard, had similar boils removed. At trial, Doucet corroborated Hanks' testimony on this point.

In its written judgment, the WCJ indicated:

> IT IS ORDERED that claimant has carried his burden of proving a causal connection between claimant's MRSA staph infection and his residence at the apartment provided by the employer, National Oilwell Varco Fluid Control.

In its oral reasons for judgment, the WCJ further stated:

> After reviewing the record, considering the law and the evidence, the Court finds that the claimant has carried his burden of proving a causal connection between his MRSA staph infection and his residence at the apartment provided by the employer, National Oilwell. His physician, Dr. Tyson Green, opined that due to the nature of [the] accident and the other facts of the case, it is probable that claimant's condition was contracted during the course and scope of his employment with National Oilwell. The court finds that due to the nature of the incident, when combined with all of the facts of the case, such as a communal apartment, weekly housekeeping, rotating in and out of the apartment with bed linens being changed weekly, the evidence more probable than not is more than evenly balanced in favor of the claimant. The evidence raised a natural inference of causal connection to the workplace environment as the reasonable cause of the MRSA staph infection. For these reasons, judgment is rendered in favor of the claimant and against the defendant.

6

As a preliminary matter, we agree with the finding implicit in the written judgment and oral reasons for judgment entered by the WCJ that Doucet suffered personal injuries as the result of an accident that occurred during the course and scope of his employment with NOV. Thus, NOV's argument that Doucet did not sustain an injury by accident since the WCJ's oral reasons for judgment is silent regarding same is without merit.

## II. Causal Connection

"'To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability.'" *Broussard v. Stine Lumber Co.*, 11-168, p. 9 (La.App. 3 Cir. 1/25/12), 82 So.3d 1274, 1279, *writ denied*, 12-451 (La. 4/13/12), 85 So.3d 1250 (quoting *Ceasar v. Crispy Cajun Rest.*, 94-30 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, *writ denied*, 94-2736 (La. 1/6/95), 648 So.2d 931). The claimant must establish a causal link between the accident and the subsequent disabling condition. *Marks v. 84 Lumber Co.*, 00-322 (La.App. 3 Cir. 10/11/00), 771 So.2d 751. "The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to an on-the-job injury." *Buxton v. Iowa Police Dept.*, 09-520, p. 12 (La. 10/20/09), 23 So.3d 275, 283. If the evidence leaves the probabilities of causation equally balanced, the claimant fails to carry his burden of proof. *Bernard v. O'Leary Bros. Signs, Inc.*, 606 So.2d 1331 (La.App. 3 Cir. 1992).

In *Odom v. Kinder Nursing Home*, 06-1442, p. 5 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 132, we directed that:

"The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. *LeBlanc* [*v. Grand Isle Shipyard, Inc.,* 95-2452 (La.App. 1 Cir. 6/28/96)], 676 So.2d [1157,] 1161. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. *LeBlanc*, 676 So.2d at 1161." *Walker v. High Tech Refractory Servs., Inc.,* 03-1621, p. 4 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.

Additionally, "[t]he totality of the evidence, lay and medical, resolves the issue. The fact finder is free to accept or reject the opinion of a physician or medical expert depending upon that expert's qualifications, credibility and testimony." *Alley v. Perini/O & G Indus.*, 44,268, p. 3 (La.App. 2 Cir. 5/13/09), 12 So.3d 427, 430.

NOV contends that Doucet failed to prove a causal connection between the staph infection and his employment by a preponderance of the evidence. In opposition, Doucet contends that NOV's argument lacks merit.

With respect to causation, NOV retained Dr. Sandra Kemmerly (Dr. Kemmerly) to offer support for their argument. According to Dr. Kemmerly's October 27, 2011 report, staph or MRSA[3] can become infectious "if they enter the body, even through such minor trauma as scratching an insect bite, cuts, scrapes or scratches" and "produce pus-containing abscesses anywhere on the body." Dr. Kemmerly stated that "[t]hese infections are generally minor, such as a skin pimple or boils(s), but can cause more serious infections, such as blood stream infections or pneumonia." Dr. Kemmerly further opined that in order to contract the staph infection, the "skin integrity" must be compromised or have at least a little opening. Dr. Kemmerly noted that a person can be a carrier of a staph bacteria but not be infected unless the bacteria enters some opening in the skin.

---

[3] According to Dr. Kemmerly, MRSA is a specific type of staph which is resistant to methicillin, a Penicillin type of antibiotics.

Dr. Kemmerly agreed that Doucet contracted MRSA. Dr. Kemmerly listed the main risk factors for catching MRSA as "young age, . . . sharing towels, razors, . . . living in crowded or unsanitary conditions, including military training camps and prisons." Dr. Kemmerly opined that "[t]hese infections are most likely to be spread in places where people are in close contact with others." Dr. Kemmerly indicated that "high risk environments" included "crowded living spaces." Dr. Kemmerly suggested that in order to prevent MRSA, individuals should avoid sharing personal items; frequently wash linens and towels; avoid sleeping on unlaundered bed linens used by others; and frequently sanitize hands with soap and water or an alcohol-based hand sanitizer.

Dr. Kemmerly opined that it was improbable that Doucet caught staph from Hanks since they had no contact with each other for the seven-week period between Hanks' infection, i.e., early July 2010, and Doucet's infection, i.e., August 22, 2010. Dr. Kemmerly concluded that "[b]ased on the currently available information, no one can determine with any degree of certainty or probability the origin of Mr. Doucet's acquisition of the MRSA" in part because MRSA "is so wide spread and prevalent in the community."

Similarly, Doucet's expert, Dr. Green, testified that he could not state with absolute certainty that the apartment was the source of the MRSA since no culture was taken at the time of Doucet's first sign of infection. Dr. Green testified, however, that it was possible that Doucet may have contracted the staph infection while at work during the week of August 17 to 22, 2010, assuming he was either at work or the apartment during ninety percent of the time. Dr. Green further testified that a causal connection possibly existed between the apartment and Doucet's MRSA assuming the possibility that a co-worker, i.e., Hanks, contracted

a staph infection one or two months prior while staying in the same apartment, under similar circumstances.

Dr. Green testified that, prior to his treatment of Doucet in the present matter for MRSA, he treated Doucet multiple times for chronic dermatitis on his lower legs. Doucet's dermatitis resulted from a chemical burn he suffered to his lower legs. Dr. Green opined that any little opening in the skin can serve as a conduit for a staph infection to enter the body. Dr. Green also stated that symptoms of MRSA normally appear within forty-eight to seventy-two hours of contracting MRSA.

The opinions of Drs. Green and Kemmerly, along with the medical records and testimony discussed above, establish the following: Before the period of August 17 to 22, 2010, Doucet had a chronic rash; yet, he had never been infected by staph. Doucet's symptom of staph/MRSA appeared on August 22, 2010, or after he had stayed at the employer-provided apartment for five days, i.e., August 17 through August 22, 2010. The medical evidence establishes that symptoms of staph normally appear within forty-eight to seventy-two hours after infection or within the crucial period Doucet stayed in the apartment. The medical evidence indicates there must be an opening in the skin to contract a staph infection. The description of the apartment fits Dr. Kemmerly's definition of a prime source for contracting a staph infection.

NOV offered no evidence to refute the noted description of the living conditions of the apartment or Dr. Kemmerly's description of such an apartment being a prime source of the staph bacteria.

In fact, and as mentioned above, the WCJ found that:

[D]ue to the nature of the incident, when combined with all of the facts of the case, such as a communal apartment, weekly housekeeping, rotating in and out of the apartment with bed linens

10

being changed weekly, the evidence more probable than not is more than evenly balanced in favor of the claimant.

A reading of the WCJ's reasons for judgment indicates that the WCJ relied on credible evidence in reaching a favorable decision in Doucet's favor. We find that the WCJ was not manifestly erroneous. Accordingly, NOV's argument lacks merit.

### III.    Penalties and Attorney Fees

NOV contends that the WCJ's award of penalties and attorney fees are unwarranted in this matter. In *Green*, 63 So.3d at 364, we noted:

> Louisiana Revised Statutes 23:1201 is the relevant statute in determining whether an employer should be assessed penalties and attorney fees for failure to timely pay indemnity or medical benefits. The statute provides that no penalties or attorney fees shall be assessed "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer . . . had no control. La.R.S. 23:1201(F)(2). Further, "[t]o avoid the imposition of penalties and attorney fees for the nonpayment of benefits, the employer has a continuing obligation to investigate, to assemble, and to assess factual information before denying benefits." *Romero v. Northrop-Grumman*, 01-24, pp. 10-11 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, 1156, *writ denied*, 01-1937 (La.10/26/01), 799 So.2d 1144.
>
>> An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits. Furthermore, the decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error.
>
> *Odom*, 956 So.2d at 141-42 (citations omitted). "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Burns v. Interstate Brands Corp.*, 09-705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 277.

As mentioned above, the evidence establishes that the living conditions of the apartment where Doucet stayed during the period of August 17 through August 22, 2010, were a prime source from which to contract a staph/MRSA

11

infection and that Doucet contracted a staph/MRSA infection no later August 22, 2010, or within the standard time frame from infection to manifestation (forty-eight to seventy-two hours). The employer has not submitted evidence to contradict this. Additionally, Doucet testified that shortly after August 22, 2010, two of his supervisors, Walraven and Hargrave, indicated that another employee had a similar infection. Notably, no testimony was offered to refute Doucet's testimony. Instead, Hanks, by deposition, verified Doucet's allegation that another employee, i.e., Hanks, suffered from the same ailment.

After reviewing the testimony and evidence in this matter, we are convinced that NOV did not reasonably controvert Doucet's claim. Accordingly, the WCJ did not err in awarding penalties and attorney fees to Doucet.

## IV. Doucet's Answer to Appeal

Doucet answered NOV's appeal seeking additional attorney fees for work done on appeal. In *Nash v. Aecom Technology Corp.*, 07-990, p. 8 (La.App. 3 Cir. 2/6/08), 976 So.2d 263, 268, this court held that "[a] workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/insurer's unsuccessful appeal." Accordingly, Doucet is awarded an additional attorney fee of $3,000.00 for the work done on appeal.

## DECREE

The judgment rendered by the workers' compensation judge in favor of Joshua Doucet is affirmed. Doucet is awarded additional attorney fees of $3,000.00 for work performed on this appeal. All costs of this appeal are assessed against National Oilwell Varco Fluid Control.

**AFFIRMED.**

12