STEWART, J.
| Plaintiff-Appellant, Marie Carter Dunlap, is appealing a judgment rendered in favor of DefendanL-Appehee, Madison Parish School Board (hereinafter referred to as “school board”). For the following reasons, we amend with remand and affirm as amended.
FACTS
Dunlap was employed as a cafeteria worker for Madison Parish Middle School in Tallulah, Louisiana for approximately 20 years. She also worked part time for Delta American Health Care from March 27, 2005, to February 27, 2008.
On October 13, 2005, she was injured at work while working at Madison Parish Middle School when a hanging iron mixing bowl, weighing approximately 13 pounds, fell on her. Dunlap was later diagnosed with bilateral carpal tunnel syndrome, migraine headaches, and depression on April 3, 2008. On October 17, 2008, she filed a *835 disputed claim for compensation, seeking permanent total disability benefits, or in the alternative, supplemental earnings benefits, the payment of medical expenses, an order reopening case # 05-07968,[1] attorney fees and penalties, and court costs.
The trial on this matter was held on-June 19, 2009. At trial, Dunlap argued that she continued to suffer from headaches and blurred vision from her 2005 accident. She also claimed that she also suffered from depression as a result of the 2005 accident.
|2The school board alleged that any indemnity benefits due for claimant’s head injury of October 13, 2005, had prescribed. Additionally, the school board asserted that there is no medical evidence to support Dunlap’s contention that any of her current conditions are related to the October 13, 2005, accident.
On September 28, 2009, the Worker’s Compensation Judge (hereinafter referred to as “WCJ”) determined that during the trial, the parties stipulated to:
1. Dunlap’s average weekly wage of $243.02 and corresponding weekly indemnity of $162.02;
2. Payment of outstanding medical expenses for the 2008 injury, if found to be related;
3. Payment of court costs related to the filing fees;
4. The school board failed to timely approve surgery for the bilateral carpal tunnel syndrome; and
5. A penalty of $1,000.00 and an attorney fee of $5,000.00 was to be paid to resolve past and future fee and penalty claims relating to this claim due to the lapse in time between the recommendation for surgery and its approval.[2]
The WCJ ruled that Dunlap’s migraine headaches, vision problems, neck problems, depression and obesity were not related to the accident that occurred in 2005. She also found that Dunlap was not entitled to compensation benefits arising from the loss of her second job as a sitter, because she was hired to sit only with her mother who had passed away. After Dunlap’s motion for a new trial was denied, the instant appeal ensued.
JjLAW AND DISCUSSION

CAUSATION

In her first assignment of error, Dunlap asserts that the WCJ erred in determining that her migraine headaches, vision problems, neck problems, depression and obesity were not related to the October 13, 2005, accident.
In a workers’ compensation case, the appropriate standard of review to be applied by the appellate court to the WCJ’s finding of fact is the manifest error or clearly wrong standard. Dean v. South-mark Const,, 03-1051 (La.7/6/04), 879 So.2d 112. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Harris v. Casino Magic, 38,137 (La.App.2d Cir.1/28/04), 865 So.2d 301. Unless shown to be clearly wrong, the WCJ’s factual findings of work-related disability will not be disturbed where there is evidence which, upon the trier of fact’s reasonable evaluation of *836 credibility, furnishes a reasonable, factual basis for those findings. Id. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Blanson v. GM Inland Fisher Guide, 33,498 (La.App. 2 Cir. 6/23/00), 764 So.2d 307.
An employee is entitled to worker’s compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031; McLin v. Industrial Specialty Contractors, Inc. 2002-1539 (La.7/2/03), 851 So.2d 1135; Scott v. Super 1 Foods, 45,636 (La.App. 2 Cir. 9/29/10), 48 So.3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1). Although the worker’s compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred and the resulting disability is related to an on-the-job injury. McLin, supra; Hofler v. J.P. Morgan Chase Bank, N.A. 46,047 (La.App. 2 Cir. 1/26/11), 57 So.3d 1128. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Key v. Insurance Company of North America, 605 So.2d 675 (La.App. 2 Cir.1992).
An employee’s preexisting disease or infirmity does not disqualify her worker’s compensation claim, if the work-related injury either aggravated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Poland v. Kroger, No. 404, 32,576 (La.App. 2 Cir. 12/8/99), 747 So.2d 711, writ denied, 2000-0853 (La.4/7/00), 759 So.2d 764. The causal connection between the disability and the on-the-job injury can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is ^sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Scott, supra.
When a claimant proves that before the accident he had not exhibited disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the activation of the disabling condition, a claimant’s work injury is presumed to have aggravated, accelerated or combined with any preexisting disease or infirmity to produce his disability. Kendrick v. Solo Cup, 44,303 (La.App. 2 Cir. 6/3/09), 15 So.3d 295; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2 Cir.1991). If the evidence is evenly balanced, or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation, then the claimant fails to carry his burden of proof. Lubom, supra.
A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bruno v. Harbert Intern. Inc., 593 So.2d *837 357 (La.1992.) Hofler, supra. In determining whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) | fifamily and friend’s testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Hofler, supra; Bruno, supra.
In this assignment of error, we must determine whether Dunlap’s migraine headaches, vision problems, neck problems, depression and obesity were related to the October 13, 2005, accident pursuant to the Louisiana worker’s compensation statutes. In the event that her injury is found to be a result of a unrelated injury or ailment, Dunlap will not be entitled to compensation benefits.
Dunlap asserts that following the October 13, 2005, accident, she suffered aggravated diabetes, aggravated headaches, depression, dizziness, blurred vision, arthritis, and weakness in her arms and hands. She testified that she has been seeing Dr. Kenneth McDonald since 2005 for headaches and dizziness. She further testified that Dr. McDonald has been treating her for a “nerve problem” and depression since the October 13, 2005, accident. Dunlap contends that the evidence established that this accident caused and contributed to her neck and arm problems, headaches, depression, and obesity.
Dr. Kenneth McDonald has served as Dunlap’s primary physician since 2001. In his deposition, Dr. McDonald testified that Dunlap did not report any severe head pain to him in the last year. Dunlap did report headaches, but Dr. McDonald stated that they also occurred prior to the 2005 accident, and that they are related to her sinusitis or high blood pressure. He further stated that even if Dunlap’s headaches were aggravated by the 2005 injury, those headaches would have been “resolved by now.” [ 7Punlap also has not reported any eye pain to Dr. McDonald in over a year. Dr. McDonald testified that any vision problems would be related to her diabetes.
On April 3, 2008, Dr. Salil Tiwari diagnosed Dunlap with carpal tunnel syndrome in both hands after examining her cervical spine and upper extremities through several nerve conduction studies. Dr. Tiwari found that the carpal tunnel syndrome was unrelated to the October 13, 2005, accident. Rather, he found that the carpal tunnel syndrome was associated with repetitive hand use that was found to be work-related. Dr. Tiwari also found that Dunlap’s migraine headaches, vision problems, neck problems, depression and obesity were not related to the October 13, 2005, accident.
Dr. Douglas Coleman Brown, who has practiced in the field of orthopaedic medicine for 31 years, first examined Dunlap on November 4, 2008. Dr. Brown performed the carpal tunnel release surgery on both of Dunlap’s hands. In his deposition, he testified that Dunlap’s ailments, including her diabetic condition, being overweight, her microvascular brain changes, and her degenerative discs in her neck, were “preexisting conditions that really aren’t related to what I was seeing her for.”
The general rule is that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. Williams v. Wal-Mart Stores, Inc., 2000-0863 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134. However, the treating physician’s testimony is not irre-buttable, and the trier of fact is required to weigh the |Rtestimony of all medical witnesses. Id.; Celestine v. U.S. Fidelity *838 & Guaranty Co., 561 So.2d 986 (La.App. 4 Cir.1990).
If the trial court concludes that the appointed physician is a disinterested party, his conclusions will be entirely objective and accordingly his opinion will be given significant weight. Green v. Coca-Cola Bottling Company, Ltd., 477 So.2d 904 (La.App. 4 Cir.1985), writ denied, 478 So.2d 910 (La.1985). The significant weight given to the opinion of the court-appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness. Id. Thus, the significant weight can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors. Id.
Since Dr. McDonald treated Dunlap years before the October 13, 2005, work accident, as well as years after the work accident, he would clearly be in the best position to provide the court with his opinion as to whether or not Dunlap’s current ailments are related to the work related accident. According to his deposition and his medical records, Dunlap’s symptoms of migraine headaches, vision problems, neck problems, depression and obesity, are occurring as a result of her diabetic condition and her blood pressure.
Based on jurisprudence, the WCJ did not err in relying on Dr. McDonald’s opinion. It is clear that Dunlap was not in good health prior to | nthe accident. Based upon this record, we conclude that the WCJ’s decision on this issue should not be disturbed, since Dunlap failed to provide any evidence that she still suffered from any illnesses and/or ailments as a result of the October 13, 2005, work-related injury. The WCJ correctly determined that Dunlap’s current illnesses, including her headaches, eye problems and depression problems are not related to the October 13, 2005, work-related injury. This assignment of error is without merit.

EXPERT WITNESS FEES

In her second assignment of error, Dunlap alleges that the WCJ erred in assessing the $750.00 witness fee to her. She believes that these witnesses, Diane Bordelon, Peggy Burns, and Donna Norman, were representatives of the case managers of the school board, and were merely subpoenaed by her as impeachment fact witnesses.
A witness’s fees shall be taxed as costs of the court. La. R.S. 13:4533. La. C.C.P. art. 1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
A trial court’s assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Davis v. Sweeney, 44,997 (La.App. 2 Cir. 3/3/10), 31 So.3d 1184; Allstate Enterprises, Inc. v. Brown, 39,467 (La.App. 2 Cir. 6/29/05), 907 So.2d 904.
Here, the fees charged by these witnesses were not introduced into evidence at trial. Rather, Dunlap was billed after trial. She then attached | mthe bill to her post-trial brief, and requested that the charges be assessed as court costs.
Dunlap asserts that the school board stipulated to the payment of the attorney fee and penalties that arose from the handling of the worker’s compensation claim by the case managers. However, the record reveals that the parties stipulated only *839 to the payment of court costs related to the filing fees.
Since the case managers were representatives, they were not qualified as expert witnesses at trial, we must consider them lay witnesses. La. R.S. 13:3671 states in pertinent part:
A witness residing or employed in the parish where the court is situated, or a witness who resides or is employed outside of such parish, but within twenty-five miles from the courthouse where the trial or hearing is to be held, who attends court in compliance with a subpoena is entitled to receive a fee of eight dollars a day for every day he is in attendance of court, and mileage at the rate of sixteen cents a mile for the distance he is required to travel in going to and returning from the place where the court is held.
Since the trial took place in Tallulah, Louisiana and the three managers are in fact employed by the school board, La. R.S. 13:3671 applies here. For that reason, we find that the $750.00 assessment for these witnesses’ fees as experts is erroneous and remand this case to the lower court to recalculate the witnesses’s fees in accordance with La. R.S. 13:3671.

DUNLAP’S SECOND JOB

In Dunlap’s third and final assignment of error, she contends that the WCJ erroneously determined that her second job as a sitter did not survive lnthe death of her mother. Moreover, she asserts that she never gave Delta American Health Care (“Delta”) the impression that she would not sit with anyone other than her mother.
La. R.S. 23:1021 states in pertinent part: (iv) A part-time employee, as defined in R.S. 23:1021(9) and who is employed by two or more different employers in two or more successive employments, shall be entitled to receive benefits as follows: (aa) If an employee is employed by two or more different employers in two or more successive employments and the employee incurs a compensable injury under the provisions of this Chapter in one of the employments, the employer in whose service the employee was injured shall pay the benefits due the employee as provided in this Chapter.
Elizabeth Watts, Dunlap’s supervisor at Delta, testified that when Dunlap was hired, she indicated that she only wanted to sit for her mother. Dunlap’s mother was hospitalized on February 27, 2008, and subsequently died during her hospital stay on March 31, 2008. Dunlap never returned to work at Delta after her mother was taken to the hospital, nor did she ever contact Delta to advise them whether she would be back.
Watts expressed that Delta often advised its sitters to seek unemployment when there is no patient for them to sit with. According to Watts’s records, Dunlap had not made any attempt to seek unemployment when her mother, the patient that she was hired to sit with, died. Further, Dunlap never inquired if Delta had another patient for her to sit with when her mother died.
| ^Additionally, Dunlap informed Mrs. Presley, a school board office employee, that she no longer worked for Delta after her mother died, since she was only employed there as a sitter for her mother.
As recognized in the first assignment of error, in a workers’ compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Here, the WCJ was not manifestly erroneous in determining that Dunlap is not entitled to additional wage benefits, since her second job as a sitter did not survive the death of her mother. Dunlap did not make any effort *840 to return to work at Delta. Therefore, this assignment of error is meritless.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the WCJ as amended and remand this case to the lower court to recalculate the witnesses’s fees in accordance with La. R.S. 13:3671. Costs of this appeal are assessed to the appellant, Marie Dunlap.
AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.

. This is a prior claim that Dunlap filed with the Office of Worker’s Compensation against the school board when she was injured on October 13, 2005. It was previously dismissed without prejudice.

. Since the surgery for Dunlap's carpal tunnel syndrome was recommended in April of 2008, but was not actually performed until November of 2008, the school board agreed to pay these penalties.