BROWN, Chief Judge.
| í Defendant, Madison Parish School Board (“MPSB”), appeals from a Worker’s Compensation Judge’s (“WCJ”) ruling in favor of plaintiff, Hazel Harrison. For the reasons set forth herein, we reverse and render judgment in favor of defendant.

Facts and Procedural History

On June 12, 2008, plaintiff, Hazel Harrison, was a paraprofessional employed by defendant. Plaintiff, who was 63 inches tall and weighed approximately 201 pounds, sat on a child’s chair while monitoring students during recess at McCall Jr. High School. The chair collapsed, causing her to fall to the ground and sustain injuries. Plaintiff saw her general practitioner, Dr. John Ford, the same day, complaining of neck and back pain. Two MRIs were taken. The lumbar spine showed a degenerative L5 disk and the cervical spine showed a tiny degenerative C5 disk. No neurological compression was seen at any level. Dr. Ford favored conservative treatment, prescribing medication and physical therapy. Dr. Ford noted fibromyalgia as a pre-existing condition.
Plaintiff also saw Dr. Brian Bulloch, an orthopaedist. Plaintiff first saw Dr. Bul-loch on October 22, 2008. His initial impressions included chronic cervical and lumbar strain, as well as mild carpal tunnel syndrome (“CTS”) bilaterally. He suspected that “she also has some degree of either fibromyalgia or myofascial syndrome ongoing as well that is separate from her workman’s compensation injury.” (Emphasis added).
Dr. Bulloch saw plaintiff again on January 8, 2009, following her unsatisfactory December 17, 2008, functional capacity examination |¡>(“FCE”). The FCE was unsatisfactory because plaintiffs performance was unreliable. On February 10, 2009, plaintiff saw Dr. Bulloch for a final time. In his records, Dr. Bulloch noted that plaintiff had put forth another unreliable effort in a second FCE; however, the examiner made recommendations on plaintiffs work restrictions and gave her a 0% cervical spine impairment rating. Dr. Bul-loch felt plaintiff had achieved maximum medical improvement. He released plaintiff back to work under the FCE restrictions and recommended muscle relaxers, anti-inflammatories, exercise, and physical therapy.
Dr. Ford referred plaintiff to Dr. E. Thomas Collum, a neurosurgeon. Dr. Col-lum saw plaintiff several times between September 2008 and April 2009. In his initial evaluation of plaintiffs MRI results, Dr. Collum noted that the lumbar spine showed a mild broad-based bulge at L5- *155 SI, but he did not see any neurologic compression of the cervical roots. After ordering a nerve conduction study, which revealed CTS, Dr. Collum saw plaintiff twice more and she continued to complain of neck and back pain. Dr. Collum found that plaintiff’s symptomatology did not match with his findings. He prescribed plaintiff wrist splints and medication. He noted that plaintiff was able to perform her job.
In September 2009, over a year after the June 2008 accident and seven months after Dr. Bullock released plaintiff to return to work, Dr. Ford sent plaintiff to a pain management specialist, Dr. Robert Strong, for treatment of her alleged pain from fibromyalgia. Dr. Strong, however, determined that plaintiff suffered from a bulging disc with protrusion at L5-jSl3 with impingement on the proximal SI nerve roots with bilateral lower extremity radicu-lar pain. He stated that plaintiff did not suffer from fibromyalgia and that he was not treating her for that condition. Dr. Strong prescribed medications and performed three separate lumbar epidural steroid injection procedures.
Defendant ceased paying wage benefits to plaintiff in November 2009. In January 2010, counsel for defendant advised plaintiff to apply for extended medical leave, due her worker’s compensation benefits being cancelled. In due course, plaintiff filed for leave and subsequently underwent two additional independent medical examinations.
Dr. Douglas Brown, an orthopaedist, examined plaintiff on March 5, 2010. He reviewed her medical history and noted Dr. Bulloch’s suspicion of fibromyalgia, though he made no similar diagnosis. His impression was chronic C5-6 degenerative disc disease, chronic L5 degenerative disc disease, and chronic L4-5, L5-S1 facet osteoarthritis. He concluded that plaintiff could perform the job details of an education paraprofessional.
Plaintiff was examined by Dr. Clinton McAlister, an orthopaedist, on April 9, 2010. Dr. McAlister also noted Dr. Bul-loch’s comments but did not diagnose fi-bromyalgia. His diagnoses included chronic low back pain with degenerative arthritis at L4-5, facet arthritis at L4-5 and L5-S1, chronic neck pain with degenerative arthritis at C5-6, bilateral carpal tunnel syndrome, and AC joint arthrosis in the right shoulder.
On January 25, 2010, plaintiff filed a 1008 workers’ compensation claim against defendant seeking wage benefits and medical expenses as well |4as penalties and attorney fees. The parties dispute when she was released back to work and offered a position in the school system. Plaintiff did return to work on April 22, 2008, as a paraprofessional doing inclusion with designated students. Trial was held on May 8, 2011, and completed on July 11, 2011. Plaintiff, a representative from MPSB, and a representative from Claims Administrative Services offered testimony. Plaintiffs medical records, the depositions of Dr. Ford and Dr. Bulloch, and various communications between the parties were admitted into evidence.
On August 19, 2011, the WCJ rendered judgment in favor of plaintiff, awarding supplemental earnings benefits (“SEB”) for the time period between November 2009 and April 2010, $2,000 in penalties, and $5,000 in attorney fees. The WCJ also held that plaintiffs treatment by Dr. Strong was related to the June 12, 2008, injury and defendant was ordered to pay for plaintiffs pain management treatment with Dr. Strong. The WCJ found that plaintiffs diagnosis of CTS was not related to her employment with MPSB. Defendant paid the judgment of SEB and penalties and attorney fees. Thereafter, defendant *156 filed this timely appeal seeking review of the WCJ’s judgment regarding plaintiffs treatment with Dr. Strong.

Discussion

The plaintiff in a worker’s compensation action bears the burden of establishing the causation of an injury to a work-related accident by a preponderance of the evidence. Albert v. Trans-Met, Inc., 38,261 (La.App.2d Cir.06/23/04), 877 So.2d 183; Qualls v. Stone Container Corp., 29,794 (La.App.2d Cir.09/24/97), 699 So.2d 1137, writ denied, 97-2929 (La.02/06/98), 709 So.2d 736.
On appeal, factual findings in worker’s compensation cases are subject to the manifest error or clearly wrong standard of review. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Alley v. Perini/O & G Indus., 44,268 (La.App.2d Cir.05/13/09), 12 So.3d 427. In applying this standard, an appellate court must determine not whether the fact finder was right or wrong, but whether the factfin-der’s conclusion was reasonable. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Lee v. Heritage Manor of Bossier City, 41,828 (La.App.2d Cir.03/14/07), 954 So.2d 276, writ denied, 07-0736 (La.05/18/07) 957 So.2d 157.

Relation of Plaintiff’s Pain Management to the On-The-Job Accident

Generally, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. Dunlap v. Madison Parish School Bd., 46,139 (La.App.2d Cir.04/13/11), 61 So.3d 833. The significant weight given to the opinion of a physician can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other relevant factors. Dunlap, supra; citing, Green v. La. Coca Cola Bottling Co., Ltd., 477 So.2d 904 (La.App. 4th Cir.1985), writ denied, 478 So.2d 910 (La.1985).
|fiPr. Bulloch, a treating physician, released plaintiff to return to work in February 2008. Dr. Bulloch opined that plaintiffs cervical and lumbar sprains were chronic. She had mild CTS and appeared to have evidence of a fibromyalgia and myofascial syndrome all of which were unrelated to the workers’ compensation claim.
Dr. Ford testified in his deposition that he felt plaintiff suffered from fibromyalgia and referred plaintiff to Dr. Strong. The two MRIs showed no neurologic compression at any level.
Dr. Collum noted that his review of the MRIs and his physical examination in September 2008 showed no neurologic compression of the cervical nerve roots. The lumbar spine showed only a small broad-based bulge at L5-S1. He found no obvious disk herniations. These findings did not match her symptomatology.
The first and second FCE were of no benefit as plaintiff demonstrated an unreliable effort. Dr. Bulloch found the FCE to be unreliable as plaintiff “wasn’t trying, she did not put forth a full effort.”
These were plaintiffs treating physicians. Additionally, two other orthopaedic doctors examined plaintiff. It is noteworthy that both Dr. Brown and Dr. McAlis-ter found that plaintiff was able to perform the job of an education paraprofessional.
We find that the evidence is overwhelming that Dr. Strong’s treatment of plaintiff was for a condition unrelated to the June 2008 accident. Dr. Strong was not a treating physician and only saw plaintiff a few *157 times. Dr. Strong’s diagnosis is contrary to the MRIs and the finding of | ./plaintiffs three treating physicians and two independent orthopaedic experts.

Conclusion

For the reasons set forth above, that portion of the judgment of the WCJ ordering defendant to pay for plaintiffs pain management treatment with Dr. Strong is reversed and judgment is rendered in favor of defendant rejecting that portion of plaintiffs claim. Costs of this appeal are assessed against appellant.
Reversed and rendered.