GARRETT, J.
hThe claimant, Felinda P. Thomas, appeals from a judgment dismissing her worker’s compensation claim with prejudice. The worker’s compensation judge (WCJ) determined in the proceedings below that the claimant failed to prove that a compensable accident occurred. After a thorough review of the entire record, including the voluminous exhibits, we conclude that the WCJ did not commit manifest error in ruling that the claimant failed to prove that she sustained a work-related injury. Accordingly, we affirm.
FACTS
The claimant began working for GM in 1995. Immediately prior to 2011, her job title on the assembly line at the Shreveport plant was a “carpet assist,” meaning that she helped the carpet installer. This job involved repetitive work and moving carpet that weighed about 20 pounds. In January 2011, GM began to institute a policy to rotate each employee to a second job for at least one hour per 10-hour shift. The claimant’s rotation job was as an “IP install,” which involved installing instrument panels or dashboards. If the hoist was working properly, she was not required to physically lift the instrument panel, which weighed about 25 to 30 pounds, to place it on studs before bolting it down.
*466 On June 11, 2011, the date of the alleged injury, the claimant was working at the IP installer job when the hoist allegedly malfunctioned. She testified that she had to physically lift and position instrument panels five or six times. According to the claimant’s testimony, this activity caused her to injure her left shoulder and neck.
|2On June 15, 2011, the claimant had an appointment with Dr. Karl Bilderback, an orthopedic surgeon, in connection with an assessment for bilateral carpal tunnel syndrome. She did not mention an accident on June 11, 2011, to Dr. Bilderback, who noted on her physical exam that the claimant was “in no distress.”[1]
GM’s internal medical records show that the claimant reported right shoulder pain to a company nurse on June 16, 2011. In an accident/illness report filled out by the claimant in her own handwriting, she gave an accident date of “6/16/11” and also stated that she reported the accident to her supervisor and to GM’s medical clinic on that same date. She specifically stated that the injury occurred when she pushed on the instrument panel with her right shoulder and that the part of her body which was injured was her right shoulder. This document was signed by the claimant and dated June 16, 2011.
On June 20, 2011, the claimant returned to GM’s medical office complaining of left shoulder pain. Subsequently, on July 11, 2011, she filled out another accident/illness report in which she stated that the accident occurred and was reported to her supervisor on June 11, 2011, and then reported to GM’s medical clinic on June 16, 2011. In this report, she asserted that she injured her left shoulder.
On July 12, 2011, the claimant was seen for left shoulder and neck pain by Dr. Steven Atchison, an orthopedic surgeon. She recounted to him that the pain began after she had “a change on her job.... She states she has |sbeen doing a job where she can tolerate but now she has added a different activity, which is causing an increase pain [sic].” Dr. Atchison testified that the claimant never stated that she suffered a specific injury and that he had no idea whether her complaints were caused by her employment with GM. Although an MRI he ordered in October 2011 showed a left rotator cuff tear, he admitted that there was no way to determine whether it was traumatic or degenerative.
In January 2012, Dr. Atchison referred the claimant to another orthopedic surgeon, Dr. John David Googe. In turn, Dr. Googe sent her to see Dr. Eubulus Kerr, an orthopedic spine surgeon. Her chief complaint to Dr. Kerr was severe neck pain that radiated down her left upper extremity across her left shoulder into her left forearm. In February 2012, he performed a cervical diskectomy and fusion on the claimant. According to Dr. Kerr’s preop history and physical report, the claimant recounted that her pain began on September 9, 2011, “when she was at work doing a car park job.”[2] He testified that he understood the pain began when she was doing a carpet job, but did not know what that entailed. He could not say whether the neck injury was related to her employment. Dr. Kerr further testified *467 that she never mentioned a June 2011 work injury.
On November 29, 2011, the claimant filed a disputed claim for compensation alleging that she injured her left shoulder, neck and left arm 14on June 11, 2011, when .she lifted a vehicle dashboard into place because the “Horse Machine” (i.e., the mechanical hoist machine) was not operating. She asserted that no wage benefits had been paid and no medical treatment had been authorized. She asked for penalties and attorney fees on the basis that the employer arbitrarily and capriciously denied her claims.
On December 7, 2011, the claimant filed an amended disputed claim for compensation wherein she also requested reimbursement for all personal medical expenses she paid and for reinstatement of six weeks of leave time and vacation time. Three days before trial, she sought to amend her claim yet again to allege a second' accident on September 9, 2011. GM objected, and the motion to amend was denied as untimely.
Trial was held on December 3, 2012. The claimant objected to the introduction of many of her past medical records on grounds of relevancy. However, the WCJ overruled the objection, noting that the issue went to the weight of the evidence, not its admissibility. During her testimony, the claimant declared that she had not received any treatment for her left shoulder at any time prior to June 11, 2011. GM’s counsel then impeached her with numerous incidents when she had complaints of left shoulder pain for which she sought treatment. These occasions dated back as far as 1998; one was as recent as February 2011.
In addition to her own testimony, the claimant presented the testimony of two of her treating physicians, Dr. Atchison and Dr. Kerr. The employer elicited testimony from Richard Mark Johnson, a GM labor relations representative, to introduce evidence pertaining to the claimant’s | fiemployment history. Subsequent to trial, GM was allowed to depose Dr. Googe and introduce his deposition into the record.[3]
On March 6, 2013, the WCJ issued written reasons for judgment dismissing the claimant’s demands. It is abundantly clear that the WCJ undertook an exhaustive review of the voluminous exhibits which were introduced into evidence along with the depositions. The WCJ noted that during the claimant’s lengthy employment with GM, she had reported a wide variety of injuries and medical conditions, some of which were not work-related. Her medical records disclosed treatment for, among other maladies, carpal tunnel symptoms, neck pain, back pain, right shoulder pain, and foot pain. At trial and in discussions with her doctors, the claimant denied prior injury to her left shoulder. However, the WCJ found that her medical records contained 14 references to pre-accident left shoulder pain, beginning in 1998.[4]
*468 The WCJ meticulously reviewed the facts surrounding the alleged accident. The medical records from the GM plant indicated that the claimant initially sought treatment on June 16, 2011, for an injury she reported as occurring to her right shoulder on that date. She subsequently filed a new incident report stating she injured her left shoulder on June 11, 2011. The medical evidence admitted at trial showed that when the | (¡claimant saw Dr. Atchison in July 2011 and Dr. Googe in January 2012, she did not refer to a specific incident causing her left shoulder complaint. When the claimant saw Dr. Kerr, who performed cervical surgery on her in February 2012, she related her neck pain to a “car park job” at GM on September 9, 2011. Also, she failed to mention any accident or a left shoulder injury when she saw Dr. Bilderback on June 15, 2011, four days after the alleged accident.
Based upon this evidence, the WCJ concluded that the claimant failed to carry her burden of proving a compensable injury by a preponderance of the evidence. He found her credibility “questionable.” Among the factors the WCJ considered in reaching this conclusion were her material alterations of the date of injury and the shoulder allegedly injured; her denial of prior left shoulder injuries despite numerous medical records to the contrary; her failure to mention the alleged accident to Dr. Bilderback when she saw him four days after the alleged injury; and her failure to produce any witness verifying her account of the accident. The WCJ specifically found that, not only did substantial evidence discredit or cast doubt upon the claimant’s account, but that the circumstances following the alleged accident “actually discredited” her testimony.
Judgment dismissing the claimant’s demands with prejudice and at her expense was signed on March 6, 2013.
The claimant appeals.
IvLAW
The plaintiff in a worker’s compensation action bears the burden of establishing the causation of an injury to a work-related accident by a preponderance of the evidence. Harrison v. Madison Parish Sch. Bd., 47,496 (La.App.2d Cir.11/21/12), 108 So.3d 153. A work-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
On appeal, factual findings in worker’s compensation cases are subject to the manifest error or clearly wrong standard of review. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Alley v. Perini/O & G Indus., 44,268 (La.App.2d Cir.5/13/09), 12 So.3d 427. In applying this standard, an appellate court must determine not whether the factfinder was right or wrong, but whether the factfin-der’s conclusion was reasonable. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Harrison v. Madison Parish Sch. Bd., supra.
While the worker’s testimony alone may be sufficient to discharge the burden of proving a work-related accident, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker’s version of the incident; or (2) the worker’s testimony is not corroborated by the circumstances following the alleged incident. Such corroboration may include medical evidence and the testimony of a spouse, fellow workers, or friends. Slater v. Mid-South Extrusion, 43,343 (La.App.2d Cir.8/13/08), 989 So.2d 252. In *469 determining whether a worker has satisfied the burden of proof, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant’s testimony is accorded great weight. Longoria v. Brookshire Grocery Co., 37,975 (La.App.2d Cir.12/19/03), 862 So.2d 1172, writ denied, 2004-0157 (La.4/23/04), 870 So.2d 299.
A claimant’s lack of credibility on factual issues can serve to diminish the veracity of her complaints to a physician. Green v. Thompson Home Health, 46,593 (La.App.2d Cir.9/21/11), 73 So.3d 490, writ denied, 2011-2460 (La.1/20/12), 78 So.3d 143.
Whether the claimant has carried the burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Nivens v. Fields, 46,524 (La.App.2d Cir.11/16/11), 79 So.3d 1144. The trial court is in a superior position to evaluate the credibility of witnesses than is the appellate court. Lewis v. Chateau D’Arbonne Nurse Care Ctr., 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. Green v. Thompson Home Health, supra.
Where the factfinder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the | listener’s understanding and belief in what is said. Daniels v. Hemphill Const. Co., 45,946 (La.App.2d Cir.1/26/11), 57 So.3d 428, writ denied, 2011-0633 (La.5/6/11), 62 So.3d 128. When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Scott v. Super One Foods, 45,636 (La.App.2d Cir.9/29/10), 48 So.3d 1133.
DISCUSSION
The claimant contends that the WCJ erred in finding that she failed to show that she suffered a compensable injury. She claims that the “undisputed” facts show that she suffered a work-related injury on June 11, 2011, and that the WCJ erred in giving too much weight to “irrelevant” facts regarding her prior injuries. The claimant also criticizes the WCJ’s determination that she lacked credibility. In contravention, GM argues that the WCJ did not commit manifest error in dismissing the claimant’s case, citing its many discrepancies.
We note at the outset that there were no witnesses to the claimant’s alleged accident. This fact makes the claimant’s credibility an issue of vital importance in the WCJ’s analysis of her assertion of a work-related injury and his determination that her claims were not worthy of belief.
Even the date of the alleged injury is mired in controversy. The claimant originally gave the date of this event as June 16, 2011, in her first accident report. She then changed it to June 11, 2011, in her amended report. Notably, she made no mention of any such accident to Dr. Bilder-back, who examined her on June 15, 2011 — four days after she purportedly suffered the injury and the day before she felt sufficiently |ininjured to seek assistance at the GM medical clinic — and he noted in his report that she was not in any distress. To confuse matters even more, when the claimant saw Dr. Bilderback again several months later, she recounted to him that she suffered an injury the day after she last saw him, which would have *470 been June 16, 2011. At trial, the claimant steadfastly maintained that she was injured on June 11, 2011.
Furthermore, the shoulder that the claimant purportedly injured is equally controverted. In her first accident report and in the medical records documenting her first visit to the GM medical clinic, the injured shoulder is described as her right one. In her subsequent report and medical visits, the left shoulder is given as the injured body part.
These disputed components of the claimant’s allegations — the date of the injury and the body part injured — are not inconsequential details. The fact that the claimant herself gave such inconsistent accounts of the circumstances surrounding her supposed accident strains credulity.
Another element adversely affecting the claimant’s credibility was her own testimony that she had never sought treatment for her left shoulder before the instant “accident.” Her own medical records directly contradicted and disproved this declaration. As painstakingly recounted in the WCJ’s excellent written reasons, medical personnel noted the claimant’s complaints of left or bilateral shoulder pain on no less than 14 occasions. The first documented complaint was in 1998; the most recent one was only four months before the June 2011 incident asserted by the claimant.
| ^Finally, in assessing the claimant’s credibility, we note that the WCJ also had the added benefit of observing the her demeanor, an advantage of which this reviewing court is deprived.
Given the numerous conflicts in the evidence, we are unable to find that the WCJ was clearly wrong in finding that the claimant lacked credibility and that she failed to carry her burden of proving her claim by a preponderance of the evidence. Finding no manifest error, we affirm the WCJ’s decision dismissing the claimant’s demands against her employer.
CONCLUSION
We affirm the ruling of the worker’s compensation judge. Costs of this appeal are assessed against the claimant, Felinda P. Thomas.
AFFIRMED.

. When she saw Dr. Bilderback again in April 2012, however, she reported that the day after her June 15, 2011, appointment, she injured her left shoulder at work while lifting carpet.

. The preop report was under Dr. Kerr’s signature. In another report with the same date which was also under the signature of Dr. Kerr’s physician's assistant, the history recounted is that the pain started in "September of 2009, when she was at work doing a carpet job.”

. In his deposition, Dr. Googe testified that the claimant did not relate a specific cause of her June 2011 left shoulder pain or a prior history of left shoulder pain. Like Dr. Atchi-son, he opined that the cause of her pain could have been degenerative or induced by trauma. He also concurred in Dr. Atchison’s statement that there was no objective evidence, only the claimant's subjective complaints, that related the left shoulder pain to her occupation.

. The claimant complained of left or bilateral shoulder pain to her primary physician, Dr. K.R. Singh, on five occasions between 1998 and 2008. The GM medical records showed complaints of left or bilateral shoulder pain on five occasions between 2001 and February 2011. Between 2007 and 2009, the claimant sought treatment for left or bilateral shoulder pain at four other medical facilities.