CALLOWAY, J., Pro Tempore,
JjWA: Kendall & Co., Inc. (“Kendall”), is appealing the judgment of the Worker’s Compensation Judge (“WCJ”) awarding Bruce McCoy, Jr. (“McCoy”), supplemental earnings benefits (“SEBs”). For the reasons assigned in this opinion, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 1, 2013, McCoy began employment with Kendall as a driver/groundsman.' His job duties consisted of driving to work sites, cutting trees/ limbs, and dumping treesAimbs. On March 20, 2013, as' McCoy was cutting a tree, it fell over onto another tree, which fell over and hit him in the head. McCoy lost consciousness, and was immediately transported to LSU Health Sciences Center to receive treatment for his headaches, neck pain, and skull fracture. He was discharged from the hospital on March 22, 2013.
For this work-related accident, McCoy received medical treatment and was paid indemnity benefits. On or about April 25, 2013, McCoy began treatment with his choice of family practitioner, Dr. Clyde Elliot, at St. Francis Primary Care. Dr. Elliot did not observe any skull fractures at that time, and noted that McCoy’s underlying scoliosis was not aggravated by the accident, .other than “a little soreness in his neck.” McCoy continued to receive treatment from Dr. Elliot for headaches and numbness/weakness in the upper extremity on his right side.
In a May 2, 2013, follow-up appointment with Dr. Elliot,' it was noted that McCoy had an indented scar on his head,'as well as “left-sided headaches, burning and weakness of the right hand.” . An MRI was ordered.
|2On July 10, 2013, McCoy also underwent a functional capacity evaluation (“FCE”) at Guillory’s Therapeutic Clinic. John Toben Guillory, OT, who performed the FCE, .found that McCoy could “easily tolerate the physical demand levels of a heavy workload.”
On August 5, 2013, McCoy received a neurosurgical second opinion from Dr. Donald Smith, who opined that “something separate and apart from the accident may have caused some disability experienced by McCoy.” Dr.- Smith noted McCoy’s previous diagnosis of scoliosis of the thoracic spine with a Chiari malformation, and that surgery was performed to depress the malformation. A CT of the brain showed no abnormalities, and an MRI of the cervical spine revealed no defects in the cervical canal.
Dr. Smith opined that McCoy, was at maximum medical improvement (“MMI”), and could perform normal activity as far as his reflexes were concerned. Regarding his head injury, Dr. Smith also opined that McCoy was cleared to return to work activity. As far as McCoy’s physical function, Dr. Smith stated he “found no impairments that could relate back to that accident or even residuals to the Chiari or scoliosis.”
*821 On August 29, 2913, McCoy sought treatment with Dr. Elliot for his recurrent right-hand numbness and left frontal headache. Dr. Elliot ordered an MRI, and did not clear McCoy to return to work. On September 6, 2013, McCoy returned to Dr. Elliot for treatment of his recurrent symptoms. Dr. Elliot issued a letter stating that while he agreed with Dr. Smith’s findings and that McCoy could return to work, he disagreed with the FCE:.
I agree with Dr. Smith’s evaluation in regard to return to duty for Mr. McCoy. The functional capacity evaluation done by [ sGuillory’s Therapeutic Clinic is quite remarkable, but it is not something that this young man can do in a sustained work condition. So I disagreed with his [Dr. Smith’s] final .opinion. As stated before, I agree with Dr. Smith’s evaluation without hesitation.
In reviewing his return to work program, the job description, his ability to drive I think is adequate. Chipping up small brush, I do not have a problem with. Flagging, setting up work zones and spotter, cutting with a hand saw and handling fuel equipment and sharpening saws, I agree with. Assisting tree removal grounds from the ground, as far as he is not having to lift heavy logs or push logs around or things of that nature, I think he would be able to do, but the heavy work with that, I do not think he should. His taking part in normal tree worker activities at a medium duty level I think is correct. He shouldn’t do any extensive activity-with work above the shoulder level. He should not be at heights such as tree climbing, etc., and doing any part with heavy lifting activities.
On September 11, 2013, McCoy sought treatment from Dr. Brian Bulloch, an orthopedic surgeon at the North Louisiana Orthopedic and Sports Medicine Clinic. Dr. Bulloch acknowledged McCoy’s Chiari malformation, and that he had been declared at MMI. Specifically, he noted that the April 23, 2013, MRI showed a previous decompression to relieve the prominent Chiari malformation, and that the malformation has been well decompressed. He also noted that the MRI showed no other areas of “spinal cord or canal compromise.” Dr. Bulloch also opined that McCoy could return to work with the FCE restrictions.
' In a letter- dated August' 21, 2013, Kendall offered McCoy a position as a groundsman. McCoy did not respond to the letter, and Kendall subsequently terminated -McCoy’s indemnity benefits .on September 6, 2013. McCoy requested to return to work with; Kendall in November 201,3. However, his request was denied. Robert Williams, vice-president for DKendall, ■ later testified at trial .that Kendall denied McCoy’s request due to Dr. Smith’s finding that he should not perform that type of job due to his preexisting conditions. He further testified that when the August 21, 2013, job offer was made, Kendalí did not have Dr. Smith’s findings.
McCoy subsequently filed a disputed claim for compensation, alleging entitle-; ment to SEBs. Trial took place on August 7, 2014. Following submission of post trial, briefs, the WCJ orally ruled, on November 21,2014, and found that McCoy carried his burden of proof in establishing his entitlement to SEBs. McCoy was awarded benefits in the amount of $18,821.89, representing SEBs through July 2014. McCoy was also awarded SEBs from August 1, 2014, to the present and continuing in accordance with law.
Kendall appeals.
LÁW AND DISCUSSION

Causation

In its first' assignment error, Kendall argues that the trial court misinterpreted *822 the evidence and testimony presented, and erred in finding McCoy satisfied his burden of proving that he was partially disabled as a result of the March 20, 2013, accident. Specifically, Kendall argues that any and all ongoing disabilities and work restrictions that McCoy suffers from are related to his preexisting conditions.
McCoy asserts that prior to March 20, 2013, he was able to perform all of the duties required at work, without suffering from any symptoms related to his preexisting conditions. However, after the accident, he was | fiunable to perform any heavy lifting without “suffering with his back.” He argues that there is a connection between the accident and his current disability because this disability was not present prior to the accident.
Factual findings in worker’s compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Grambling State Univ. v. Walker, 44,995 (La.App.2d Cir.3/3/10), 31 So.3d 1189. In applying the manifest error-clearly wrong standard, the appellate court does not determine whether the trier of fact was right or wrong, but determines whether the factfinder’s conclusion was á reasonable one. Id.
Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Gramblmg, supra.
An employee is entitled to receive worker’s compensation benefits for personal injuries from an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). A work-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
IfiThe plaintiff in a worker’s compensation action bears the burden of establishing the causation of an injury to a work-related accident by a preponderance of the evidence. Thomas v. GM Benefits & Service Ctr., 48,718 (La.App.2d Cir.1/15/14), 132 So.3d 464; Harrison v. Madison Parish Sch. Bd., 47,496 (La.App.2d Cir.11/21/12), 108 So.3d 153. The claimant is not required to establish the exact cause of the disability, but the claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Quinones v. USF & G, 93-1648 (La.1/14/94), 630 So.2d 1303; Thompson v. Dillard’s Dept. Store, 32,974 (La.App. 2 Cir. 5/10/00), 759 So.2d 1074. The causal connection can be established when the employee proves that before the accident he was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Quinones, supra; Thompson, supra.
A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is *823 claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689; Henderson v. Graphic Packaging Intern., Inc., 48,491 (La.App.2d Cir.11/20/13), 128 So.3d 599. The preexisting condition is presumed to have been aggravated by the accident if the employee proves (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling 17symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of a causal connection between the accident and the activation of the disabling condition. Peveto, supra; Henderson, supra. Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the preexisting disease or infirmity to produce his disability. Peveto, supra; Henderson, supra.
Whether the claimant has carried the burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Nivens v. Fields, 46,524 (La.App.2d Cir.11/16/11), 79 So.3d 1144; Thomas, supra. The WCJ is in a superior position to evaluate the credibility of a witness than is the appellate court. Lewis v. Chateau D’Arbonne Nurse Care Ctr., 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515; Thomas, supra. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. Green v. Thompson Home Health, 46,593 (La.App.2d Cir.9/21/11), 73 So.3d 490, writ . denied, 2011-2460 (La.1/20/12), 78 So.3d 143; Thomas, supra.
As a general rule, the testimony of a. treating physician is accorded greater weight than that of -one who examines a patient only once or twice. Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App.2d Cir.11/2/11), 79. So.3d 417, and citations therein. The treating physician’s opinion, however, is not irrebuttable, and the WCJ is required to weigh the testimony of all medical witnesses. Miller v. Clout, 2003-0091 (La.10/21/03), 857 So.2d 458.
McCoy, who was 19 years old at the time of the trial, testified at trial that he was diagnosed with scoliosis at the age of 13. He further testified that he‘had two surgeries, prior to his employment with Kendall, that were related to scoliosis and a Chiari malformation. After he was diagnosed with these conditions and the subsequent surgeries were performed, McCoy stated that the only restriction he had was not to play football.
McCoy further testified that prior to the March 20, 2013, accident, he was able to perform his job without restrictions. In fact, McCoy even volunteered to work overtime. After the accident, McCoy worked for Murphy Oil as a cashier, and for Direct TV as a sales representative. He attempted to work at Choice Brands, as a driver. However, he was only able to work there for one day because the job included unloading the truck, which involved heavy lifting.
As we mentioned in the facts section of this opinion, Dr. Elliot, McCoy’s choice of family-practitioner, acknowledged McCoy’s congenital underlying scoliosis of the spine, and his subsequent surgery. However, Dr. Elliot did not find that this preexisting condition was aggravated, other than “a little soreness in the neck and a post-concussion headache.” ' Following the March 20, 2013, accident, Dr. Elliot treated McCoy for recurrent headaches, right- *824 hand numbness, and constipation. The record did not 19include any evidence that these symptoms were present prior to the accident.
Dr. Bulloch acknowledged McCoy’s Chi-ari malformation, and that he had been declared at MMI. Specifically, he noted that the April 23, 2013, MRI showed a previous decompression to relieve the promineht Chiari malformation, and that the malformation had been well decompressed. He also noted that the MRI showed no other areas of “spinal cord or canal compromise.”
When Dr. Smith.was- asked if it was possible for the work accident to have aggravated either of McCoy’s spinal conditions, he found that “it was possible, but he saw no evidence that it had occurred.” Regarding McCoy’s complaints of difficulty in the right shoulder and upper extremity, Dr. Smith did not find them to be related to his‘ preexisting condition. Rather, he found that the problems could have happened as a result of the accident. Dr. Smith also testified concerning McCoy’s brain function, finding that a blow to the head like the one he received in the accident could produce damage that lowers threshold levels to the brain. However, he believed that McCoy could function as' a driver.
The WCJ had the opportunity to observe the demeanor of the witnesses, both expert and lay. Jurisprudence requires her to give greater weight to the opinion of the treating physician, Dr. Elliot. See Morgan, supra. Dr. Elliot treated McCoy for symptoms that were not- present prior to the March 20, 2013, accident. The WCJ’s reliance on Dr. Elliot’s opinion, and the opinion of Dr. Bulloch, was not erroneous.
b nAlthough the medical evidence shows that McCoy had a preexisting medical condition, he testified that prior to the March 20, 2013, accident, he was able to perform all of the duties required at work, without suffering from any symptoms related to his preexisting conditions. His testimony is supported by the fact that before the accident, he performed his driver/groundsman’s duties without manifesting any disabling symptoms.
After a review of the testimony and the documentary evidence in the case sub justice, we find that the WCJ was not manifestly erroneous in finding that McCoy met his burden of proof in establishing causation between his disability and. the March 20, 2013, accident. This assignment of error' is without merit.
Supplemental . Earnings Benefits (“SEBs”)
In its second assignment of error, Kendall argues that the WCJ erred in finding that McCoy was entitled to SEBs.
The purpose of SEBs is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Banks, supra; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). An employee is entitled to receive SEBs if he or she sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his or her average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case." Banks, supra; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. This analysis is |nnecessarily a facts and circumstances -one in which the court is mindful of the jurisprudential tenet that worker’s .compensation is to be liberally construed in favor; of the coverage. Banks, supra; Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in or *825 der to defeat the employee’s claim for SEBs or establish the employee’s.earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was , offered to, or proven to be available to, the employee in his or the employer’s community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks, supra; Daigle, supra. Actual job placement is not required. Banks, supra.
In Banks, supra, the supreme court applied the “minimum” standard test, concluding that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following by competent evidence:
1. the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
2. the amount of wages that an- employee with claimant’s experience and training can be expected to earn in that job; and
3. an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
By suitable job, we mean a job. that claimant is not. only, physically capable of pér-forming, but one that also falls within the' limits of the claimant’s age, experience, and education, unless, of course, the employer or potential | ^employer is willing to provide any additional necessary training or education. Banks, supra. ,
In order to defeat McCoy’s claim for SEBs or establish his earning capacity, Kendall must prove, by a preponderance of the evidence, that McCoy is physically able to perform -a certain job and that the job was offered to, or proven to be available to, him in his or Kendall’s community or reasonable geographic region. See La. R.S. 23:1221(3)(c)(i).
Dr. Elliot did not release McCoy back to work until September 6, 2013. At the time of Kendall’s August 21, 2013, job offer to McCoy as a groundsman, McCoy had not been released.. As we previously stated, Dr. Elliot disagreed with the FCE, and opined “that taking part in normal tree worker activities at a medium duty level is acceptable but that he [McCoy] should not do any extensive activity with work above the shoulder level and should not be at heights such as tree climbing and should not be doing the heavy lifting activities.”
McCoy requested to return to work with Kendall in November 2013. However, his request was denied. Robert Williams, vice-president for Kendall, later testified at trial that he denied McCoy’s request due to Dr. Smith’s finding that he should not perform that type of job due to his preexisting conditions. We agree with the WCJ’s determination that Kendall’s denial of McCoy’s request prevents Kendall from proving that'McCoy'is physically able to perform a certain job.
The WCJ found that the findings of Dr. Elliot and Dr. Bulloch provided McCoy with sufficient evidence to meet his burden of proof that | iShe is no longer able to earn 90% :of.-his pre-injury wage. We agree, and the record supports these findings. The evidence shows that McCoy sustained a compensable injury, and was unable to earn' 90% of his pre-accident wage. Therefore, the WCJ was not manifestly erroneous in finding that McCoy was entitled to SEBs.
CONCLUSION
For the foregoing reasons, we affirm the WCJ award of benefits to McCoy. Costs of this appeal are assessed to Kendall.
AFFIRMED.